Woolson, District Judge,
(orally charging jury.) In the indictment presented in the case now on trial John C. Newton and Millard F. Oxford are jointly indicted, but the court has ordered a separate trial as to these defendants. In the case now under consideration, John C. Newton alone is on trial. Your verdict will establish the guilt or innocence of the defendant, Newton, leaving the guilt or innocence of Mr. Oxford to be established in another trial, wherein another jury shall determine his—that is, Oxford’s—guilt or innocence. To the indictment herein John C. Newton pleads not guilty. This plea puts in issue every point necessary to be proven in order to convict; and before the government is entitled to a verdict of guilty, every point necessary to convict must be satisfactorily proven. The defendant is presumed by the law to be innocent. The case starts with this presumption in defendant’s favor; and to overthrow this presumption, and justify a verdict of guilty at your hands, the guilt of defendant must be established beyond a reasonable doubt. The indictment in this case contains two counts. The court instructs you that the second count is now withdrawn from your consideration, and you will confine your- deliberations to the first count of the indictment, and the verdict which you will return into court will be confined to the first count; and the evidence submitted, and instructions given you, will be applied by you to the first count of the indictment, and your finding relate only to the question of guilt or innocence of defendant under said first count. The charge in the first count of the indictment is that of conspiracy to defraud the United States, and that one of the parties to the conspiracy committed an act which is stated in the indictment, and which was so committed in furtherance, or to effect the object, of such conspiracy. Briefly stated, the conspiracy so charged may be said to be that the defendant, John C. Newton, entered into a conspiracy with Millard F. Oxford, and other persons to the grand jurors unknown, to defraud the United States; and that such defrauding was to be accomplished by, and had for its object, the unlawful and fraudulent procuring from the United States of money on the unlawful and fraudulent pretense and claim that under the statutes and arrangements then existing between the United States and the Des Moines & Kansas City Railway Company (of which company said Newton was at said date the vice president and general manager) said company was car *277 rying over the post route extending over its line of road (which said line was a post route of the United States) an average daily weight of mail matter greatly in excess of the average mail matter actually carried over said post route; that the means to be used in carrying such conspiracy into effect was to load down the mails on said post route, during a period when the government was weighing the mails carried thereon, with old and substantially valueless newspapers, which were during said weighing period to be mailed over said post route, but not mailed for any legitimate purpose, nor with any intent to use the said mails legitimately therefor, but with the unlawful and fraudulent intent thereby to create a fictitious and fraudulent average, on which the compensation to be paid by the United States to the said railway company for carrying the mail over said post route was to be based, and thus and thereby the government be induced to pay out and should pay out for carrying said mails, and said railway company should thereby receive, an amount greatly in excess of the amount which in fact and of right, under the statutes with reference to carrying said mail, would be paid by the government, if, instead of such paying therefor on the basis of said fictitious and fraudulent average of mail matter carried, the payment therefor by the United States had been based on the average weight carried over said line of the legitimate mail matter,—that is to say, the weight of mail matter other than said newspapers so mailed by the said Newton. And the overt act performed to carry out the purpose of this alleged conspiracy is stated in the indictment to be that at the southern district of Iowa there was mailed and caused to be transported over the said post route on sundry dates on and after April 1,1891, and during the mail-weighing period thereon, large and extraordinary quantities of old newspapers, the same not being placed in the mail for any legitimate purpose, but with the sole intent and purpose of fraudulently increasing the weight of the mail so transported over said line during said weighing period.
The general facts introduced in evidence are largely undisputed, and the controversy in this trial is largely as to whether the facts proven constitute a conspiracy, and whether defendant, Newton, was connected with such a conspiracy, to defraud the government. The evidence shows without dispute that in the winter of 1890 and the early months of 1891 the Des Moines & Kansas City Railway Company was operating a line of railway between Des Moines, Iowa, and Cainesville, Mo., and that said line of railway was a post route, and known as “No. 148,084,” and the mails were being carried over the entire length of that line; that some time about the month of November, 1890, the superintendent of said railway company applied to the post-office authorities for a reweighing of the mails, with a view to an increase in the compensation then being paid to the company for carrying the mails; that this application was based on the ground that an increase had actually occurred in mail matter so carried, and thereby an increase in compensation was rightfully due to the company. Prom a subsequent letter from said superintendent to the post-office authorities who had charge of the adjustment of such compensation it appears that the reweighing was refused by the *278 said authorities; that thereupon the said superintendent urged more largely in detail his reasons for the claim for increased compensation. The uncontradicted testimony of the superintendent is that this correspondence was submitted to defendant, Newton, and was a subject of consultation between said defendant and the superintendent. At this time, and for some time previous thereto, as well as subsequently, and up to the finding of the indictment in this case, the defendant, Newton, was the general manager of said Des Moines & Kansas City Railway Company. That about January 10,’ 1891, the post-office authorities,— and I use the term “post-office authorities” as meaning the proper officials at the post-office department at Washington,—the post-office authorities forwarded to defendant, Newton, as general manager of the said railway company, a circular letter, and inclosed therewith a blank, which has been spoken of as the “ Railroad Distance Circular,” and which you will have before you in your deliberations in the case. On this blank the distances between stations on this line of railway were to be entered, with certain other information, for the purpose, as stated therein, of being used in adjustment of compensation to said railway company for carrying the mails. It is shown that this circular, after being filled out and signed by the superintendent of the railway company, was returned to the post-office authorities, with a letter from the president of the said railway company, and that about January 16, 1891, the post-office authorities forwarded notice to defendant, Newton, as general manager of the said railway company, that for 30 successive working days the mail service of the government would weigh the mail carried over the line of said railway, for the purpose of adjusting the compensation to be paid to the said railway company from July 1, 1891, and this notification invites the co-operation of said company in taking such weights.
At this point I may properly call your attention to the- law with reference to the method in which the compensation to be paid for carrying the mails is determined. The statute provides that at dates to be fixed by the postmaster general, and not less frequently than once in every four years, there shall take place on each of the mail routes, such as that of said railway company, an actual weighing of the mails for not less than 30 successive working days, and the average weight of the mails actually carried on the route as thus ascertained during such weighing period should thereupon constitute the basis upon which was to be computed, at the prices fixed by law, the compensation to be received by the company for carrying the mails. The testimony shows without contradiction that the weighing of the mails provided for in said letter of notification was entered upon and proceeded with during such weighing period, and the results of the said weighing for each of the said weighing days were daily forwarded to the post-office authorities, and to the officials of the said railway company. One complete set of these daily reports is in evidence before you, and shows that said weighing extended over the entire line of said railway from Des Moines to Cainesville. The undisputed evidence further shows that, during at least a large portion of this *279 weighing period, there was mailed by or under the direction of the defendant, Newton, large quantities of newspaper matter, the same being addressed to post offices which caused said mail in the ordinary method of carrying same to be carried over this said line of railway, some of such mailed matter being carried over the entire line of said railway, and other portions being carried over parts of said line. Evidence has been introduced touching the method in which the mail matter was prepared for mailing, and was actually mailed; that large amounts of newspaper wrappers were bought from the government and used in preparing such newspapers for mailing, and that the amount of newspapers so mailed amounted to a large quantity, some two bales, in weight approaching a couple of tons; and the character of these newspapers is also in evidence as to their dates and the languages in which they were printed, and the method in which they were prepared for mailing; and the evidence is also undisputed that during said mailing period Mr. Oxford caused to be rewrapped and remailed over said line of railway, or some parts thereof, large portions of said newspaper mail, the wrappers, with the address written or stamped thereon for such remailing, having been forwarded to Mr. Oxford by defendant, Newton, or under his directions. And the evidence further shows without contradiction that the newspaper mail matter thus mailed and remáiled over said line of railway was weighed with the other mail matter carried over said line, and was included in said daily reports of weighing, and constituted a large part of the mail matter carried over said line during said weighing period. You have heard these weights as they have been given in evidence before you, and it is unnecessary for me to repeat the same at this time.
The main questions presented for your consideration herein may be placed under three points: First. Did a conspiracy, as charged in the indictment, exist? Second. If such conspiracy existed, was the overt act charged in the indictment committed in furtherance of such conspiracy? Third. If you find the conspiracy and overt act as charged, was defendant, Newton, a member of it; that is, was he one of the conspirators? The duty of the government, before it can properly demand a verdict of guilty at your hands, must be fulfilled in satisfactorily proving to you, as hereafter stated, each of these three propositions. If it fails in satisfactorily proving any one of these three propositions, then you cannot convict; that is, if the proof is found by you to establish the existence of the conspiracy, and not of the overt act charged, or if such proof shall establish the conspiracy, and the committal, in furtherance thereof, of the overt act charged, but does not satisfactorily prove to you that defendant, Newton, was a member of such conspiracy, then the government has not fulfilled the requirements of the law as to proving the guilt of defendant, Newton; and in either such a case your verdict must be for the defendant. But if you find under the evidence and the law as I shall presently state it to you that the conspiracy charged did exist, and that in furtherance thereof the overt act charged in the indictment was committed, and that defendant, Newton, was one of the conspirators, then the government has met all the points it is compelled to prove; *280 and thereby, if the guilt of defendant is found by you beyond a reasonable doubt, in such a case it would be your duty under your oaths as iurors to return a verdict of guilty against the defendant, Newton.
What is a conspiracy, as the statute uses that term ? and how is it formed ? First. Two or more persons must enter into it. One person cannot constitute a conspiracy. If every part of the acts charged in the indictment had been done by defendant, Newton, alone, and without any other person having combined with him in any arrangement or agreement with reference thereto, or with reference to any result to be arrived .at, through or by means of said act, then there would be, in law, no conspiracy. And this would be true even though the result to be attained or the act committed towards effecting that result was criminal, and wholly criminal. No conspiracy can exist without at least two persons being conspirators therein. Second. It is not necessary, in order to constitute a conspiracy, that two or more persons should actually meet together,—that is, personally be together,—and then enter into an explicit or formal agreement for an unlawful or criminal scheme; nor is it necessary, before a conspiracy can be formed, that two or more persons shall directly—that is, expressly, by a writing or by spoken words—state or agree as to what that unlawful or criminal scheme is to be, or the particulars of the plan, or the means to be applied in carrying out such a conspiracy. Persons agreeing upon or entering upon a scheme to defraud the government are most likely to confer together in secret with reference to such a scheme, and secretly to develop any plans they may agree upon; and such secret agreement, and the scheme thus concocted, and the plans to be used therein, can rarely, in such cases, be-proven by direct testimony. Conspiracies are seldom, indeed, formed in a manner open to direct proof. A conspiracy is rather a thing of darkness. Instead of coming out into the light of a written or completely expressed agreement, it lurks in secret. It loves darkness rather than light, for its deeds are evil. And accordingly it is sufficient to constitute a conspiracy that two or more persons in any manner, or through any contrivance, positively or tacitly, come to a mutual understanding to accomplish a common and unlawful design. In other words, where an unlawful end is sought to be effected, and two or more persons, actuated by the common purpose of accomplishing that end, work together in any way in furtherance of the unlawful scheme, every one of said persons becomes a member of such conspiracy, irrespective of whether the part he takes is a superior or subordinate part, and irrespective of whether he performs his part in the presence of his co-conspirators, or at a remote distance from them, and from the place where they are performing their parts in the conspiracy. A combination formed of two or more persons to effect an unlawful end, said persons acting under a common; purpose to accomplish the unlawful end designed, is a conspiracy. Such connection with or relation to a conspiracy as the law takes notice of and punishes is not dependent upon personal, pecuniary interest in the result of the unlawful adventure. Where there is an attempted attainment of an unlawful end by two or more persons, who are actuated by *281 a common design of accomplishing that unlawful end, and who in any Way, and from any motive, work together in furtherance of the unlawful scheme, each one of such persons becomes a member of a conspiracy. It is not necessary, in order to constitute the conspiracy charged in the indictment, that every one of the parties to such conspiracy should reap a pecuniary advantage therefrom. The statute does not so require. The statute is aimed expressly against “conspiracy to defraud the United States,” and this is irrespective of any pecuniary advantage accruing to any of the conspirators. Were it otherwise, the statute would have made the crime of such conspiracy to defraud the United States depend on the conspirators reaping benefit therefrom. The gist of the crime is conspiring to defraud the government.- It is true that ordinarily such a conspiracy is attended with expectations in the minds of the conspirators of some advantage, pecuniary or otherwise, to arise to them therefrom; but this is not essential. A conspirator may be actuated by a desire to help some other person through the result of the conspiracy. He may actively assist in the conspiracy through friendship for someone whom he believes will be benefited thereby. Or he may instigate or co-operate in the conspiracy with a purpose to revenge some wrong or injustice which he feels the government has committed towards him, or his property or his interests in any manner. Yet if there appears in the evidence any pecuniary or other advantage which was expected, or might be expected, to arise from the carrying out of the conspiracy, that fact may properly be considered by the jury as a circumstance in the case. It is therefore obviously proper and important, in determining whether the person charged is one of the alleged conspirators, that the jury inquire whether there existed any interest or motive, pecuniary or of any other character, and whether accruing to him personally or to any enterprise or business with which he is connected, or to any person in whose success or advance he is interested, or whether any such motive or interest existed for the participation of such defendant in the unlawful enterprise. This may oftentimes materially aid in determining the relation of the party accused towards the acts committed, and whether or not such person was connected with the alleged conspiracy.
The indictment in this case is found under section 5440 of the Revised Statutes of the United States. That section provides that—
“If two or more persons conspire, either to commit an offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of said parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty,” etc.
You will notice that the provisions of this section are very broad,— conspire to defraud the United States in any manner or for any purpose.” It is not necessary that the conspiracy be successful. It may fall short of the actual commission of the fraud intended. The government may not have been actually defrauded. The conspirators may have been arrested, or the conspiracy discovered, and its purpose thwarted before the conspiracy has resulted in defrauding the government, and *282 before the conspirators have reaped any pecuniary or other advantages from their conspiracy. Yet, if a conspiracy actually existed, and any party to the conspiracy does any act towards effecting the object of the conspiracy,—that is, towards effecting the fraud,—the offense, under this statute, is complete. So that you will see that merely agreeing or combining together to commit the fraud is sufficient to constitute the offense, providing any one of the parties has taken a step towards its execution. The section I have quoted, you will notice, is very sweeping in its terms, and was doubtless intended to meet the parties to the fraud against the government on the very threshold of the perpetration of the crime, and to render them liable to its penalties before the consummation of the fraud.
Before you can find that the conspiracy charged in the indictment actually existed,'you must find from the evidence that one or more persons were acting in concert or combination with the defendant, Newton, towards effecting or causing the result or end claimed in the indictment, viz., to defraud the United States. If the evidence does not satisfactorily prove to you that some person or persons acted in concert with defendant, Newton,—that is, were knowingly assisting said Newton, or participating with him, in the conspiracy charged, or in carrying out the same,—then you cannot find that a conspiracy existed. You will thus see that the assistance or participation in the alleged unlawful acts must be intentional. It follows, therefore, that proof of mere suspicion, or bare knowledge, that the act is being done by others, without such intentional participancy in it or connection with it, is not sufficient. While knowledge of the commission of the unlawful acts may properly be taken into consideration the jury in connection with whatever facts or circumstances may be proven, to aid in determining whether or not any other person was connected with the defendant, Newton, as a participant in or a party to the alleged unlawful acts, if any such acts are proven, yet such mere knowledge, without more, by another person, — that is, knowledge that defendant, Newton, was attempting to defraud the United States, (if you find the evidence shows he was so attempting to defraud,)—would not make such other person a party to the acts. The proof must go further. Knowledge of the attempt must combine with an intent to defraud. If Mr. Oxford or any other person knew that defendant, Newton, was doing any act with intent to defraud the United States, and having such knowledge aided in doing those acts, assisted defendant, Newton, in the commission of the acts, if any such were being committed, (the intent wherein was to defraud the United States,) and in so assisting intended to aid the defendant in carrying out such intent, then I say to you, that Mr. Oxford, or such other person as the proof may show, by thus participating while having such knowledge, becomes and is in law a party to a conspiracy to so defraud. It is not essential, however, to the existence of a conspiracy that each conspirator shall have knowledge of all the details of the conspiracy. The conspiracies, from the nature of the ease, must be very few in which all the details that enter into the con *283 spiracy or into the methods of its operation are known to all the members of that conspiracy. Where the conspiracy includes many members it is practically impossible that each member shall be advised of all such details. And it is sufficient to render the person liable as a conspirator that he has knowledge of the common design or purpose of the conspiracy, and actively assents thereto, and assists in carrying said common purpose and design into execution by the common means agreed upon or practiced for so executing the conspiracy.
I may say to you at this point that it is possible that an act which may not be unlawful when performed by one person may become unlawful when performed by two or more persons. There are crimes which cannot be committed—as, for instance, a riot—by one person. This is also true, as I have heretofore stated, of the crime of conspiracy. And in this case your verdict will not be for or against the defendant, Newton, on the ground that what he did, if done by himself, would or would not have been a criminal act; that is, an act made criminal by the statute. You cannot acquit or convict the defendant, Newton, on such grounds. He does not stand here charged with committing by himself alone any crime, but he is charged with having, in conspiracy or unlawful combination with Mr. Oxford and others to the grand jurors unknown, committed the crime charged. And therefore, if the act charged to have been committed by the defendant, Newton, when done by himself alone, would not be a criminal act, but when committed by said defendant in connection with others would under the instructions given you become criminal, and if the evidence shall satisfy you that such act was committed by defendant, Newton, and such other person or persons, and they were acting in concert to a common end in commission of such unlawful act, then such evidence would properly be taken against defendant, Newton, as showing the existence of a conspiracy. Let me recall the test to be applied in this connection. I have already said, in substance, that, in order to establish a conspiracy, it is not necessary that there shall be any explicit or formal agreement for an unlawful scheme between the parties. Nor is it necessary to prove that the parties to the conspiracy were ever in this district wherein this case is being tried. Their personal presence in Iowa is not necessary to constitute the crime under the indictment. The criminal conspiracy charged in the indictment may have been in existence, and yet none of the conspirators ever have been within this state, or ever have personally met together. Upon this point the court charges you that, if the overt act, as it is frequently called,—that is, the act charged in the indictment as having been committed in furtherance of the conspiracy, —was committed within this district, and as charged in the indictment, then it does not matter where the conspiracy was formed, or the unlawful agreement was entered into; for in contemplation of law such conspiracy is held to be renewed, or as it is sometimes, and perhaps more properly, said, it is continued, in the district where such overt act is performed; and such act gives to the court in that district jurisdiction of the case. Therefore it becomes immaterial where the conspiracy* if it *284 ever existed, was formed or entered upon. If it existed, and the overt act charged in the indictment was committed in this district by any party to the conspiracy, to effect the object of the conspiracy, then whoever was a party to said conspiracy or unlawful agreement is guilty of the crime charged in the indictment.
One word as to the time or date. The indictment states the date of the formation of this conspiracy as having been the 10th of March, 1891. Now, the government is not restricted to that date. The only restriction is the statute of limitations. For the purpose of this trial it is sufficient as to the date of this conspiracy, if one is found by you, that the same existed within three years prior to the finding of the indictment herein, which finding was upon May 12, 1891.
I have suggested that direct and positive proof is not required to be made of any express agreement to do the act forbidden by law. It is frequently impossible to produce such proof. Persons planning or arranging a conspiracy do not usually meditate or plan their conspiracy in the presence of witnesses not parties to it, nor in the terms of express agreement. All concerted action to commit a fraud is secretly originated, and is ordinarily shown by separate and independent acts, tending to exhibit a common design. . The common design is the essence of the charge, and it is not necessary to prove that the parties came together and actually agreed in terms to have that design, and to pursue it by common means. Hence it is competent to prove the alleged conspiracy by circumstances. The understanding, combination, or agreement between the parties in the given case to effect the unlawful purpose charged in the indictment must be proved, because without the unlawful, or, as it is sometimes called, the corrupt, agreement or understanding, there is no conspiracy. (And in this connection I may say that the term “ corrupt,” as applied to a ' conspiracy, means an “unlawful” agreement.) The acts of the parties, the nature of those acts, with the accompanying circumstances, the character of the transactions or series of transactions, as the evidence may disclose them, should he investigated and considered, and are sometimes the only source from which to derive the evidence of an agreement, which may be express or may be implied, to do the act which the law condemns. If, in this case, the evidence shall satisfy and prove to you that the defendant, Newton, and Mr. Oxford, or said defendant, Newton, and other persons, did actually concur in a common purpose and common design to defraud the United States as charged in the indictment, then it is not necessary that the government should prove any other agreement to concur.
It has been claimed by counsel in argument, that, in order to justify a verdict of guilty under the indictment, the government must show a conspiracy to have been formed and in full existence before the weighing of the mails, as alleged in the indictment, was entered upon. In this view the court cannot concur. If the jury find from the evidence that at any time during the period of the said weighing of the mails, as shown in the evidence, the defendant, Newton, and Mr. Oxford, or the defendant and any other person or persons, formed or came together in a common design of *285 defrauding the government in connection with said mail weighing, as charged in the indictment, and then defendant, Newton, or Mr. Oxford, or any other person who liad entered into this common design or understanding, committed the act charged in the indictment, for the purpose of carrying into effect this common design or understanding, then, immediately on the commission of such act, defendant, Newton, and Mr. Oxford , and any an d all other person or persons who were parties to the common design or understanding, would he guilty of this crime of conspiracy. And this is equally true even if previous to this forming of their unlawful common design or understanding, if one was ever formed, defendant, Newton, or any other person, had been doing the very act which afterwards, by being committed to effect the conspiracy, ripened the statutory crime of conspiracy; for, as I have heretofore said, whether defendant, Newton, or any one else, acting by himself, was or was not guilty of crime, does not fix the guilt of defendant, Newton, or his innocence, in the matter of any conspiracy thereafter formed, or put into effect. If you find from the evidence that defendant, Newton, and Mr. Oxford, or defendant, Newton, and any other persons, came to a common understanding or design to defraud the government in the manner charged in the indictment, and, for the purpose of carrying out the object of said common design, one of them did the overt act charged in the indictment, at whatever period in the mail weighing in evidence the same was done, then this would justify a verdict of guilty against defendant, Newton.
Evidence has been permitted to be introduced in reference to certain alleged rewrapping and remailing at Cainesville, Mo., by Mr. Oxford, or under his express direction, of certain portions of the newspaper matter which had been mailed over this post route; that is, the line of railway from Des Moines to Cainesville. This evidence cannot be taken as proving the overt act, or act performed to carry out the object of the conspiracy, as stated in the second point submitted in these instructions. Such overt act must be proven as laid in the indictment; that is, that within this district there was mailed from Des Moines, during said weighing period, over said post route, the mail matter described, and as described in the indictment; and unless such overt act is proven as it is laid in the indictment, and as I have stated it to you, the crime charged cannot be found by you to have been proven. But this evidence as to said rewrapping and remailing by said Oxford at Cainesville, Mo., has been admitted before you, and is to be considered by you, for the purpose of bringing before you the nature, the extent, the plan, and operations of the conspiracy, if such conspiracy existed. There has been laid before you evidence tending to show conversations when defendant, Newton, was not present, and acts done by others than said defendant in his absence. These conversations and these acts in defendant’s (Newton’s) absence are not evidence to show his connection with the conspiracy unless they are brought home to him. These conversations and acts by others than defendant, Newton, and in his absence, were admitted to show the nature and purpose, the plans and operations, of a conspiracy if one *286 existed. Guilt cannot be fastened upon any person by the declarations or statements, oral or written, of others. Guilt must originate within a man’s own heart, and it must be established by his own acts, conduct, or admissions. It must be understood that under the established rules of law the various acts and admissions of others than the defendant, and made in his absence, are not evidence to’show that the defendant was a member of the conspiracy; for no man’s connection with a conspiracy can be legally established by what others did in his absence, and without his knowledge or concurrence. The conspiracy charged in the indictment is a conspiracy to defraud the United States. The question becomes material in this trial whether the conspiracy, if one has been proven, is such a conspiracy; that is, one whose purpose was to defraud the United States. And you may properly inquire, looking at the facts proven, whether such was the intent and purpose and natural effect of the conspiracy. It may assist you, in such consideration, to inquire what would have been the natural effect, had the conspiracy, if one existed, proceeded to its complete working out. If it had not been discovered by the government, and if the weights obtained during the weighing period heretofore described had been acted upon or used by the government as a basis for fixing the compensation for carrying the mails over the line of which defendant, Newton, was the general manager, would the United States have been defrauded by said carrying out of such conspiracy, if one has been proven? For defendant, Newton, cannot justly complain if said conspiracy, if one is proven to have existed, is viewed and tested from the standpoint of its natural effect. Nor can he justly complain if the natural effect of such conspiracy is held to be the object intended to be carried out by it. And, unless the evidence satisfies you that defendant, Newton, did not intend his acts, proved in the evidence, should have their natural effect, you are authorized to give to such acts that natural effect, as being the effect he designed the acts should have.
You will have observed in the trial of this cause that one of the theories upon which is based the claim of defendant’s (Newton’s) innocence is that defendant, Newton, was not acting in concert or agreement with any other person in whatever acts he did, as shown in the evidence; that is, that no agreement or combination with reference to such acts had been entered into between him and any other parties, and that they were not acting together in the matter with any common design or purpose to effect a common end. I have already with considerable detail stated the law applicable to this claim. I will now only add, if you find from the evidence that the acts claimed -by the government to have been committed in the conspiracy charged were by the parties committing them performed simply as employes, servants, or agents'of defendant, Newton, and were not performed by them as parties to or members or abettors of such conspiracy, then your verdict must be for the defendant. But if any of the parties performing any of said acts performed the same with a common design, purpose, and understanding on their part and that of defendant, Newton, as I have heretofore charged *287 you, thereby to assist defendant, Newton, in carrying out any design of defrauding the government, then they are no longer, as to such matters, in contemplation of law, his employes, servants, or agents, but thereby they become co-conspirators, and their acts become his acts, so far as they are performed in carrying out such common design or purpose; for it is an unvarying rule of law that the act of any conspirator, as well as the statement of any conspirator, in carrying forward or effecting the purpose of such conspiracy, becomes the act and statement of every co-conspirator, and the law charges every co-conspirator therewith, and holds him responsible therefor.
It is contended on behalf of defendant, Newton, and thus argued by his counsel before you, that said defendant had the lawful right to mail the said newspaper mail matter, which the undisputed' evidence shows he did mail, and that such mail matter was, under the law, mailable; and that defendant, Newton, having prepaid thereon the postage prescribed therefor by law, he was guilty of no crime in mailing the same; and that the law contains no limit for the amount of such mailable matter he could lawfully thus mail; and that said defendant thereby violated the law in no particular. On the other hand, it is admitted by the government that the act of defendant, Newton, in mailing any amount of mailable matter, so long as he alone was a party to such mailing, did not violate the statute prohibiting conspiracies. But the government contends that as soon as he and any other person or persons combined together, or by a common design and understanding, and for a common purpose, mailed the matter of the nature of that introduced in evidence, and in the quantities proven, and under the circumstances shown in evidence, that thereby there is shown an attempt to defraud the United States, which, because of the common design and purpose, had become and was a violation of the statute with reference to conspiracies to defraud the government. The position of the government, as stated by counsel in argument before you, does not concede that the mailing proven, if performed by defendant alone, would not, under the circumstances attending same, have been performed by him with intent to defraud the United States, but it is claimed that such concert of action between defendant, Newton, and Mr. Oxford has been shown as to render the parties thereto amenable to the statute punishing conspiracies to defraud the United States. And counsel for defendant, Newton, while denying any such conspiracy existed, contend that the acts of any person other than the defendant in mailing said mail matter was the act of an employe, servant, or agent of defendant, and was performed in such capacity, and by said defendant’s express directions. I will not here attempt an elaboration on this point. The contention is substantially covered by a former portion of these instructions. But I may here repeat that, if there is proven an intent to defraud the United States, and that defendant, Newton, and Mr. Oxford, or defendant, Newton, and others, worked together with a common purpose and design to effect that end, one performing one part and another another part in the working out by common means of such common design, then a conspiracy is *288 proven. And if Mr. Oxford or any others had been or were in the employ of defendant, Newton, they would become, and by reason of such common purpose, and by its working out by the common means at their hands, the law would regard them, not as employes, servants, or agents of defendant, Newton, but as principals with him in a conspiracy having this common design or purpose.
Reference has been made in the argument before you, by counsel upon either side, as to the effect to he given, upon the question of guilt, to the knowledge or the lack of knowledge on the part of defendant, Newton, and Mr. Oxford, and of others, if others were associated with them therein, that the acts by them performed were a violation of the law; that is to say, as to whether you could rightfully find that a conspiracy existed, as charged, if the parties performing the acts, which it is claimed were a part of, or were performed in carrying out, the conspiracy, did not at the time know that such acts were a violation of law. On this point I have to say to you, gentlemen, that a conspiracy cannot exist without a guilty intent being then present in the minds of the conspirators; but this does not mean that the parties must know that they are violating the statutes of the United States. The government is not required to prove, in order to sustain a verdict of guilty, that the parties knew that some statute forbade the acts they were performing. If these acts, in the manner and under the circumstances surrounding their performance, were in fact violations of law, the parties are held guilty accordingly; and the question of their knowledge or of their ignorance of such acts being contrary to law is a matter which the court would be authorized to consider in passing sentence if a verdict of guilty should be found by you. It is the fact of violation of law, and not the knowledge by the violater that he is violating the law, which you are to pass upon. Accordingly, if you find from the evidence that a conspiracy, as I have defined the same in these instructions, did exist to defraud the United States, as charged in the indictment, and that some one or more of the parties connected, there with, in carrying out the object of said conspiracy, committed the overt act charged in the indictment, and that defendant, Newton, was connected wdth such conspiracy, then you are authorized to render a verdict of guilty herein. And it would not avoid the guilt if you were further to find that defendant, Newton, or Mr. Oxford, or any other person charged in this indictment or connected by the evidence, was ignorant of the fact that such acts made them liable to punishment. Indeed, if such conspiracy existed, and every person connected therewith was ignorant that there was a statute making such conspiracy criminal, yet such ignorance could not, of itself, prevent a verdict of guilty. It would be a most serious impediment to the administration of justice if a verdict of. guilty in trials like the present could not be found without first proving that the parties had knowledge at the time of the guilty act that there was a statute punishing such act. No person has a right to defraud the United States. And whether or not an attempt to defraud the government is punishable by law is determined by the application of the statutes to the act proven. And if a *289 conspiracy to defraud the United States existed, as charged in the indictment, and some one of the parties to the conspiracy did the act charged to carry out the object of such conspiracy, and defendant, Newton, was connected with the conspiracy, these facts, if found by you from the evidence, will justify at your hands a verdict of guilty, even though the defendant and every other party to the conspiracy had no knowledge that congress had enacted a statute applicable thereto.
In considering the acts proven by the evidence herein, and determining to whom the responsibility therefor attaches, you will apply the general rule of law that that person is responsible for an act who either performs it himself, or causes another to perform it at his request or by his direction; that is to say, that it was not necessary, before the defendant, Newton, or any other person can be held responsible for whatever may legally attach thereto, that he should in person have wrapped up the newspapers, and he himself have written or stamped the address thereon, and in person have deposited them in the mails. If he procured or caused others to perform these acts, or any of them, for him, and by his order, the law regards his relation thereto the same as though he had himself and in person performed the acts. Your verdict, gentlemen, must be found upon the evidence introduced before you and considered by you, under the law as given by the court. The indictment in this case has not been introduced in evidence, nor can its allegations be taken by you as proof of what it states. The office of the indictment has been fully performed in this case, when, having been presented by the grand jury, the defendant is placed upon trial, and the trial proceeds within the lines marked out by said indictment. The fact that such indictment has been found by the grand jury affords no presumption of the guilt of defendant. As I have heretofore said to you, this trial commences before you with the presumption of innocence in favor of defendant, and .your verdict must be for defendant, unless you find that the evidence overthrows this presumption, and brings your minds beyond a reasonable doubt to a verdict of guilty. The evidence introduced shows that the route agents, post-office inspectors, and certain other employes or officials in the post-office service knew, at the time of the mailing complained of in the indictment, that it was being done, and that they suspected that it was being done with a fraudulent intent. Whether they did or did not know these facts or suspect this intent is not important as affecting the guilt or innocence of the defendant herein, and cannot change such guilt or innocence as the same may be proven by the other evidence introduced. If the defendant is otherwise proven guilty of the crime charged, the knowledge of such post-office officials or employes cannot shield him. But the jury are authorized to consider whatever publicity or secrecy attended the acts proven, as circumstances in the case, to be taken in connection with all the other facts proven by evidence. .
Defendant, Newton, has produced witnesses who have testified to the reputation of defendant in the vicinity of his residence for honesty and personal integrity. This is competent evidence, and the good character *290 of defendant in this respect is a fact to be weighed and considered by you in the light of all the evidence bearing upon the question of his innocence or guilt of the crime charged against him in the indictment. But good character is no defense against crime actually committed, and the jury are charged that, if the guilt of defendant is plainly proven to the satisfaction of the jury, notwithstanding the evidence of his good character, then it is the duty of the jury to convict, irrespective of such evidence of character. If, however, the jury find the evidence conflicting and doubtful as to defendant’s guilt, the importance which the jury are authorized to give to the evidence of good character is thereby increased.
I have to say to you further, gentlemen, and this statement is to be understood as affecting the entire charge given you, that if you can reconcile the evidence before you upon any reasonable hypothesis of the defendant’s innocence, it is your duty so to do; and before you can find the defendant guilty of the crime charged in the indictment you must find such guilt beyond a reasonable doubt. This does not mean that upon every proposition of fact under the evidence you must find that proposition proven beyond a reasonable doubt. This reasonable doubt relates to the question of defendant’s guilt under all the evidence. You will take up the evidence bearing on each proposition of fact, and from that evidence determine whether such fact proposition is by the evidence satisfactorily proven to you; and then, when applying the fact propositions proven to the question of defendant’s guilt, you will act upon the rule I have stated, and must find him guilty beyond a reasonable doubt, before you can return a verdict of guilty. And after considering all the evidence, if you have a reasonable doubt of the guilt of defendant, you must acquit him; but if, upon such consideration, you do not have a reasonable doubt of his guilt, it is your duty to return a verdict of guilty. A reasonable doubt, as I have used that term, is what the term indicates. It is a doubt based on reason, and which is reasonable in view of all the evidence. It is an honest, substantial misgiving, generated by insufficiency of proof. It is not a captious doubt, nor a doubt suggested by the ingenuity of counsel or jury, and unwarranted by the testimony; nor is it a doubt born of a merciful inclination to permit the defendant to escape conviction, nor prompted by sympathy for him or those connected with him. But if, after an impartial comparison and consideration ■of the evidence, you can candidly say that you are not satisfied of the ■defendant’s guilt, you have a reasonable doubt. If, however, on an impar-tial comparison and consideration of all the evidence, you have an abiding conviction of the guilt of defendant, such a conviction as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt.
Gentlemen, you are the sole judges of the testimony. Under the oaths you have taken you are to receive as the law applicable to the case the instructions given you by the court, and you are to be governed by them. But it is your sole province to determine the weight to be given to the testimony which has been introduced. Consider the demeanor of the *291 witnesses on the witness stand, their relation to the defendant in any way, business or otherwise; their interest or lack of interest in the case; any bias or prejudice exhibited by them; the consistency or inconsistency of their statements; whether their testimony is contradicted or corroborated by other testimony regarded by jou as credible and worthy of belief; and, having considered the testimony in the light of all the circumstances proven in the case, give to the testimony of each witness that weight to which you may find it is justly entitled. Wherever you can consistently reconcile conflicting testimony, it is your duty to do so; but where you find any conflict of testimony which you cannot reconcile, hesitate not to cast aside that which you deem incorrect and untrue, and accept and hold fast to the truth as you find it established in the evidence. Gentlemen, take this case, determined to do justice both to the government and to the defendant. The government is in no wise entitled to, nor does it ask at your hands, the conviction of any man who is not proven guilty of the crime of which he stands charged; nor should your verdict declare the guilt of such a one. But if the defendant is proven guilty within the terms of the instructions I have given jmu, it is your duty to say so by your verdict. Thus innocence is protected by our courts, and guilt is brought to its just punishment.
ADDITIONAL INSTRUCTIONS.
The jury having sent to the court the following interrogatory, “ Hon. Judge Woolson: Have we the right to consider the remailing at Cainesville, Mo., as evidence of a conspiracy? L. L. Collins, Foreman,”— the jury were called into court, and the following additional instructions given them:
Gentlemen of the Jury: I am in receipt of your inquiry this morning, as to whether you have the right to consider the remailing at Cainesville, Mo., as evidence of a conspiracy. The instructions given you upon yesterday were intended to cover this point. You were instructed that three things must be found by you to justify a verdict of. guilty: First, that a conspiracy such as charged in the indictment existed; second, that one of the parties in the conspiracy committed the overt act charged in the indictment; third, that defendant,. Newton, was a party to such conspiracy. I expressly instructed you, and your present inquiry indicates that you so understood the court, that the remailing at Cainesville, Mo., would not prove, or tend to prove, the overt act, because that act is by the indictment charged to have been done in the southern district of Iowa; and that this remailing by Oxford could not be considered as proving or tending to prove that the defendant, Newton, was a member of a conspiracy, unless®such remailing was brought home to and connected with him; and that his connection with a conspiracy must be proven by his own acts or declarations; and that, while any letters or telegrams in evidence from Newton to Oxford might be considered upon the question of defendant’s (Newton’s) connection with a conspiracy, the act of the remailing by Oxford would not, and could not, be proof *292 that defendant, Newton, was a member of a conspiracy, unless that remailing is brought home to and connected with defendant, Newton, or shovm to have heen done with his assent, direction, or approval. You were further instructed that the remailing at Oainesville hy Oxford was to be considered by you as bearing on the nature, extent, plans, and operations of any conspiracy of which you might find them a part. You will recognize as being contained in the instructions given you upon yesterday that, ordinarily, a conspiracy can only be proven by circumstantial evidence; that is, the conspirators do not say to others, nor write letters to others saying, “ There is a conspiracy, and we are the conspirators.” And so the law permits the existence of a conspiracy to be proven in all cases by circumstantial evidence; that is, the government proves what it claims to be the circumstances showing the existence of a conspiracy and the operations under its plan. It may show the acquaintance of the parties charged one with another, any business relations existing between them, any communications passing between them, and the more or less close relationship they sustain to each other. Then it may show the interest they may have in doing what is charged to be the object of the conspiracy, and the interest each one has, and the desire or willingness shown by the others to assist, in accomplishing that end; and it may also show what was done, as it claims, in carrying out the conspiracy to effect the common design or purpose charged; and the several parts performed, and wherever performed, towards reaching the common end; and any other like circumstances which may throw light upon the question whether the conspiracy existed. And from all the circumstances proven the jury are authorized to find that a conspiracy did or did not actually exist, as the result shall be found by them under all the evidence. So, in this case, you will take the evidence bearing on any personal or business relations between defendant, Newton, and Mr. Oxford; on the telegrams and letters and any other communications proven to have passed between them; on whatever desire of the one you find apparent to aid or assist the other; on any acts performed by either or by both, or by others under the direction of either or both, with reference to any part of what is alleged to be a conspiracy, or to any matters which are claimed to have been the carrying out of the conspiracy, whether in Iowa, Missouri, or elswhere, and including the mailing and remailing of the mail matter in Iowa or Missouri. You will consider all the evidence, circumstantial or direct, which may throw light upon the question whether the conspiracy charged actually existed; and, having so considered all the evidence, and governed by the instructions given you by the court, you will find your verdict according to the fact, as your judgments and consciences shall enlighten you.
The jury found a verdict of acquittal.