UNITED STATES v. STILSON et al.

(District Court, E. D. Pennsylvania. November 26, 1918.)

No. 114.

1. CRIMINAL LAW ⊚⇒921—NEW TRIAL—GROUNDS.
    The admission in evidence in a criminal case of admissions of defendant, though erroneous, is not ground for new trial, where the fact admitted was not really in controversy, and was independently proven.

2. CONSPIRACY ⊚⇒40—CRIMINAL CONSPIRACY—PERSONS CHARGEABLE.
    Where offenses are being committed, of such character that they are necessarily the result of concert of action all who participated in the things which are done resulting in such offenses may, if the inference fairly arises out of everything which has been done, be found guilty of conspiracy to commit the offenses.

3. CRIMINAL LAW ⊚⇒915—NEW TRIAL—INDICTMENT—CONSPIRACY.
    In view of Rev. St. § 1025 (Comp. St. 1916, § 1691), providing that no indictment shall be deemed insufficient by reason of defects in matter of form which do not tend to the prejudice of defendant, an indictment *held* not fatally defective, on motion for new trial, because it charged in separate counts a conspiracy to commit acts which constituted offenses under different statutes.

4. CRIMINAL LAW ⊚⇒814(1)—TRIAL—INSTRUCTIONS.
    Every charge to a jury ought to reflect the real issue arising out of the evidence, and also as presented in the arguments addressed to the jury.

Criminal prosecution by the United States against Joseph V. Stilson, Joseph Sukys, K. Vidikas, and J. V. Stalioraitis. On motion in arrest of judgment and for new trial. Denied.

Francis Fisher Kane, Owen J. Roberts, and Samuel Rosenbaum, all of Philadelphia, Pa., for the United States.

Henry John Nelson and Henry John Gibbons, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The spirit of frank and candid discussion of the legal merits of the case and defense which have been manifested throughout by counsel, not only justifies, but calls for, full consideration of all the points which counsel deem worthy of discussion. We shall therefore follow the line of thought presented by the

<hr>

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

arguments, although discussing the points involved in a somewhat different order.

1. First, with respect to the second point (reason 5) discussed by counsel. The defendants asked for a severance at the trial. Following the denial of this motion, a demand was made for the allowance of peremptory challenges to the limit which would have been allowed in the aggregate, had the defendants been separately tried. Perhaps the only comment for which this reason for a new trial calls is afforded by that made by counsel in moving for the severance, and demanding on behalf of each defendant the full number of challenges given by the act of Congress to all of the defendants jointly. The comment in effect was that it was made with the knowledge that the unbroken practice in the trial of cases in the courts of the United States was in line with the denial of the motion and of the claimed right of challenge. This was accompanied with an expression of the expectation of counsel that the trial judge would feel constrained to follow these precedents. This expectation was realized. As the trial judge did not feel at liberty to depart from the established practice, and as the same view is still entertained, no discussion of the principles of law involved seems to be called for, inasmuch as it is deemed unnecessary to vindicate a practice authoritatively established. Any relief to which the defendants may feel themselves entitled must be accorded by an appellate court.

2. Again, with respect to the question of the constitutional freedom of the press being involved, which is discussed by counsel as point 6 (reason 9). This may be passed with a very apt quotation from the brief of counsel. It is there recognized that, so far as a trial court is concerned, the question has been settled, but it is raised because (and here comes in the quotation) "hope springs eternal in the human breast," and the hope is expressed that the line of cases which admittedly rule the question against the defendants may be overruled. This court, however, is, of course, not asked to overrule them.

3. The point discussed as point 3 (reason 6) calls for nearly the same comment. A search warrant had been regularly issued, under the authority of which papers and things had been seized. These were subsequently offered in evidence. One of the defendants made certain statements at the time of the visit of the officers of the United States in serving the warrant.

It is not denied (in fact, is almost categorically conceded) that the weight of authority at least (to quote the briefs submitted) justifies the admission of the evidence which was admitted. Several additional observations may be made. The papers which were seized were so seized, not only by authority of a warrant for the purpose regularly issued, but they were not the papers of the defendants, but of the publishing corporation. Again, the papers consisted in the main of the files of the Kova publication, and the seizure was of little practical importance, beyond the facility thereby afforded the authorities to examine the publications as they chronologically appeared, and saved them the time and trouble of collecting them elsewhere.

[1] A like observation may be made as to the admissions made by the defendants. They were admissible because clearly voluntary. The

presence or absence of this finding is admittedly the test of admissibility, and the finding is not in question. Here, again, the point is robbed of all practical value because of the circumstance that the fact admitted was not in real controversy and was independently proven. Sparf v. United States, 156 U. S. 51, 15 Sup. Ct. 273, 39 L. Ed. 343; Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568.

4. This brings us to a consideration of those reasons for a new trial which present the substantial defense interposed. The defense is that there was no evidence to justify a finding that the defendants were engaged in a conspiracy to have committed the acts which admittedly are offenses condemned by the Espionage Law. Without going into details, there was the publication of the paper known as Kova, which not only contained articles which in themselves were violations of the law, but which in their whole tone and spirit, and in the tone and spirit of the publication itself, evidenced a defiance of the law and a purpose to oppose the operation of the law. In addition to this, there were other publications, in the form of pamphlets or circulars, which in every line breathed sedition.

The connection of one of the defendants with the commission of these acts was directly and clearly shown. The authorship of some of the articles and circulars was traced to him with satisfying directness. He was shown further to have been a party to the publication and circulation of others. This evidence went to the overt acts averments.

[2] The distinction between the crime of conspiracy and the commission of the offenses which are the object of the conspiracy is clear enough, and sight of this should not, of course, be lost. When, however, offenses against the law are being committed, and are of such a character that they are necessarily the fruit of concert of action, all who participate in the things which are done, resulting in the act which is of this common product character, may, if the inference fairly arises out of everything which has been done, be found guilty of a conspiracy to do what has been done. It is, of course, true that the connection may have been such as to justify no more than a suspicion of participation in the conspiracy, and may evidence nothing more than knowledge that the offenses were being committed, or of an intention on the part of others to commit them. Neither evidence which would warrant such a suspicion nor a finding of the fact of such knowledge would in itself afford a sound basis for a finding of the guilt of conspiracy; but if, in addition to the knowledge, there is evidence of a participation in or connection with the acts which are committed, and this participation or connection was an intentional act, it may support a finding of guilt.

The point is made that so far, at least, as the defendant Sukys is concerned, there was nothing upon which to base a finding that he was a participant in anything in the nature of a conspiracy, beyond the fact that he had to do with the mechanical work of getting out the paper, and the doctrine which was announced in United States v. Newton (D. C.) 52 Fed. 275, is invoked as applicable to his case. When anything which is the common product of several persons is done, that there are gradations or differences of degree in the guilt of those involved may be clear enough. It is also true that the participation of some of those involved may be so casual or so perfunctory, or be of

such an irresponsible character as that they cannot be said in any real sense to be parties to a conspiracy to do the thing which has been done. Such a finding, however, is essentially a fact finding, and is to be determined by the triers of fact.

Bringing the discussion of the principle involved from its statement in the abstract to its application to this concrete case, the evidence against the defendant Sukys was such that the trial judge would not have been justified in withdrawing the case against him from the consideration of the jury, but required the submission of it as it was submitted under what we still think to have been adequate instructions to the jury to enable them to pass upon the question of his guilty participation in what was done, and in consequence his connection with the conspiracy, which the jury found to exist. After a verdict of guilty, the same reasons which controlled the trial judge in submitting the question forbid an interference with the verdict. There remains, of course, the duty of giving all the considerations which affect this particular defendant their due weight in imposing sentence.

[3] 5. In the supplemental paper book which has been submitted the point is made that the indictment under which the defendants were tried is bad for duplicity. The proposition of law that it is bad pleading to incorporate in one count two offenses, made such by different statutes, and calling for different measures of punishment, is a proposition the soundness of which must be admitted. Ammerman v. United States, 216 Fed. 326, 132 C. C. A. 470. This admission, however, does not carry with it the further admission that the principle is applicable to this indictment.

The first count presents the fact of the United States being in a state of war, and that during the time of the existence of this state the defendants entered into a conspiracy to have committed certain acts which at such time were offenses against the law. One of them was the offense of causing insubordination. Another was to obstruct enlistments, and it further charges that in pursuance or furtherance of this unlawful conspiracy the defendants committed certain overt acts, and indicates the conspiracy charge to be that which is defined, and the punishment of which is provided for, in section 4 of the Act of June 15, 1917, c. 30, 40 Stat. 219.

The second count differs from the first, in that it charges that the object of the conspiracy was to bring about the offense of inducing men in the military service to desert; the offense being that defined, and the punishment of which is provided for, in the fifth section of the Act of May 18, 1917, c. 15, 40 Stat. 80.

It is true that we have two acts of Congress declaring and defining the offense of conspiracy. One is that which was re-enacted in the 1909 Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1088 [Comp. St. 1916, § 10165 et seq.]). The other is that which is to be found in section 4 of the Act of June 15, 1917. A conspiracy to have committed any of the acts which are offenses against the law in the Act of June 15, 1917, would have been, within the limitations imposed, an offense against the law under the Criminal Code provision of 1909. The two enactments are substantially the same in their provisions, section 4 of the 1917 act being a re-enactment of the act of 1909, except that its

provisions are limited to the acts declared by that act to be offenses, while the act of 1909 applies to any act which is an offense against the law. It would not, we assume, be asserted that an indictment charging a conspiracy to have committed any of the offenses defined in the Act of June 15, 1917, would not have been good under section 4 of that act. It would not, we assume again, be asserted that an indictment for a conspiracy to have committed the offenses defined in the other sections of the act would not have been a good indictment under the provisions of the Criminal Code of 1909, if there had been no section 4 in the act of 1917.

The offense which the defendants are charged to have conspired to have committed by the second count of the indictment is an offense defined by the Act of May 18, 1917, and is, we think, properly charged as an offense against the 1909 enactment. In the sense intended by counsel, the charge of conspiracy in count 1 is in legal intendment a different offense from the conspiracy charge in count 2. Had the two offenses been charged in one count of the indictment, the count would have been bad for duplicity, and on demurrer would have been so held. It does not follow, however, that an indictment charging the two offenses in separate counts would be open to the same criticism. The question might, of course, be raised by demurrer, and in a sense may be now raised. In view of the provisions, however, of section 1025 of the Revised Statutes (Comp. St. 1916, § 1691), counsel exercised, we think, good judgment in not so raising it. In every real case there is a substantial question of law or fact presented for discussion. Sometimes issues of law and fact are both raised. Sometimes good tactics as well as strategy on the part of counsel calls upon them to bring the stress to bear on one issue and sometimes on the other. When, however, the real issue is one of fact, it is usually the part of wisdom in counsel to meet it as such, and not to obscure the substantial issue through and by raising questions of procedure. There are times, of course, in which the opposite tactics may be wise, but they are exceptional.

Obeying the injunction of section 1025, we must now apply to this indictment the test there prescribed. Applying this test, we are unable to find that there was anything in the form of this indictment which tended "to the prejudice of the defendants." This conclusion is uninfluenced by any of the cases to the effect that the door is closed against the objection now urged, because not made before plea and trial. It is put upon the broad ground that the form of the charge played no part in the trial of the case, and because of this did not injuriously affect the defendants. If counsel, upon a back view of the events of the trial, had changed their minds, and now think anything could have been gained by raising an objection, which they before thought would not have been to the advantage of the defendants to have raised, and were able to show that the defendants had been prejudiced by anything in the form of the indictment, the time of making the objection would not influence us. We are, however, strongly of opinion that counsel exercised good judgment in what they did, and that the defendants were not prejudiced thereby. The case was tried

on its fact merits, and in a very gratifying atmosphere of fairness and of candor throughout.

The argument addressed to us is in effect that the objection now under discussion would not have pertained to the case, if the second count had been abandoned or withdrawn. A verdict upon an indictment containing only the first count would thus admittedly have been good, and this count will support the verdict in the eyes both of the law and of substantial justice.

6. The position that there must be evidence of a conspiracy before overt acts of some of the conspirators can be shown is well taken. We think, however, this principle was recognized and applied in the trial of the case.

It would give undue length to this already over-long opinion to discuss the evidence, in order either to point out what evidence there was of conspiracy, or to discuss the other point of what evidence there was to connect Sukys with it; nor do we see occasion to discuss the objections which have been urged to the charge of the court, beyond making one or two observations. This brings us to the final point in support of the reasons for a new trial which voice objections to what the trial judge said to the jury.

7. As to the connection of Sukys with the newspaper publication, he had written himself down as the individual who was responsible for that publication. This act, as any other act, was open, of course, to explanation, and it cannot be denied that the explanation given might well go far in the direction of reducing the degree of his criminality. In the face of this, however, and the other evidence in the case, no trial judge could have been supported in a refusal to submit the evidence for the consideration of the jury. The consideration which it should receive has already been intimated as one having an important bearing upon whatever sentence should be imposed upon the defendants. The trial judge did not feel called upon to advert to this feature of the defense in the charge, because it had been fully, clearly, and with marked ability discussed by counsel.

[4] With respect to the charge of the court, this observation is to be made: Every charge to the jury, which is a real charge, and not merely a colorless statement of the law and of the issues of fact involved, ought to reflect the real issue arising out of the evidence, and also as presented in the arguments addressed to the jury. It can never be rightly interpreted unless it is read in the atmosphere of the trial. If the parties, in presenting their cause, strip it of all formalities and technical distinctions, and get right down to the marrow of the case, and to a discussion of the substantial questions involved, it is not only helpful to the jury, but inevitable, that the charge should reflect the same spirit. There can never be applied to a charge under such circumstances the canons of criticism to which a treatise on the law of the case could properly be subjected. The attempt was made in the charge to direct the attention of the jury to the distinction between something which had been made an offense against the law and a conspiracy to have that offense committed. It was therefore impressed upon the jury that it was necessary for them to find, not merely a conspiracy, but a conspiracy to have a crime committed; and this carried with it

the further necessity of making clear the essentials of the crime to commit which the defendants were charged with having conspired. We do not see that this was confusing to the jury, and, on the contrary, think it was helpful to them.

The rule for a new trial is discharged, and the United States may move for judgment on the verdict and sentence.