UNITED STATES v. WELLS et al.

(District Court, W. D. Washington, N. D. July 31, 1917.)

No. 3671.

1. CONSPIRACY ⊜43(6)—INDICTMENT SUFFICIENT.

An indictment under Criminal Code, § 37 (Comp. St. § 10201), charging conspiracy to violate section 211 (Comp. St. § 10381), by sending through the mails indecent matter of a character tending to incite murder and assassination, *held* sufficient, without setting out the matter.

2. CONSPIRACY ⊜43(11)—INDICTMENT CHARGING FORCIBLE RESISTANCE OF CONSCRIPTION SUFFICIENT.

An indictment charging conspiracy to oppose by force the authority of the United States and to resist such authority by mutiny and armed force, by circulating after declaration of war with Germany printed matter set out, advising forcible resistance to conscription, *held* to charge an offense, although at the time the Selective Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k) had not been enacted, but was pending in Congress.

Criminal prosecution by the United States against Hulet M. Wells, Sam Sadler, R. E. Rice, and Aaron Foslerman. On demurrer to indictment. Overruled.

Clay Allen, U. S. Atty., and Ben L. Moore, Asst. U. S. Atty., both of Seattle, Wash. .

Vanderveer & Cummings and Mark M. Litchman, all of Seattle, Wash., for defendants.

NETERER, District Judge. The defendants are charged with conspiracy in five counts. Count 1 charges a conspiracy under section 37 of the Penal Code to violate section 211 of the Penal Code (Comp. St. §§ 10201, 10381), and charges that they printed, prepared for distribution, etc., a certain circular, set out in hæc verba in the indictment, which, with some omitted portions, is as follows:

"No Conscription!

"No Involuntary Servitude!

"No Slavery!

" 'Neither slavery nor involuntary servitude * * * shall exist within the United States.'

"The above is a part of the Constitution of the United States. The President and Congress has no authority to set it aside. * * * For the President and Congress to do so is to usurp the powers of autocrats, and if unresisted means the abandonment of democracy and the destruction of the Republic. * * * Wake up! Stand by us now, for when we have become an army we will have ceased to think and we will shoot you if told to shoot you! Just so it is expected that we will shoot and kill our brothers in other lands. * * * Resist! Refuse! * * * Better be imprisoned than to renounce your freedom of conscience. * * * Tell them that we are refusing to register or to be conscripted, and to stand by us like men. * * * If we are to fight autocracy, the place to begin is where we first encounter it. * * * If we must fight and die, it is better to do it upon soil that is dear to us. * * * Better mutiny, defiance and death of brave men with the light of

the morning upon our brows, than the ignominy of slaves and death with the mark of 'Cain and our hands spattered with the blood of those we have no reason to hate * * *"

—it being the object of such conspiracy by force and violence to prevent the enforcement of any law of the United States relative to enlistment and mobilization of the army of the United States. The conspiracy is alleged to have been entered into on or about the 1st day of May, 1917. Count 2 charges a conspiracy to violate section 211 by mailing indecent matter of a character to incite murder and assassination. Count 3 charges a conspiracy to oppose by force the authority of the United States. Count 4 charges a conspiracy to resist by mutiny, bloodshed, and armed force any enforcement of the laws of the United States. Count 5 charges a conspiracy to prevent, hinder, and delay the enforcement of the Selective Service Law by force, etc.

Demurrer is filed to each count in the indictment, on the ground that—

"Each and all of them do not recite facts sufficient to constitute an offense against the United States."

[1] It is urged by the defendants that the government should set out in count 2 what letters, pamphlets, etc., were referred to, and in what respect they were indecent in character, intended to incite murder and assassination, and in what manner and for what purpose it was proposed to accomplish the object of the conspiracy.

The gist of the offense is the conspiracy, and the object of the conspiracy is to violate section 211, which makes penal the posting of any matter therein prohibited. This court, in U. S. v. Dahl, 225 Fed. 909, held that an indictment need not set out the particular Chinese aliens who were sought to be imported, in an indictment charging a conspiracy to violate that section of the Immigration Law, but it was sufficient to refer to Chinese aliens generally as are not entitled to come into the United States. The Circuit Court of Appeals affirmed this conclusion in 234 Fed. 618, 148 C. C. A. 384. In that case the defendant's attention was called to a particular class of aliens in that the indictment was definite and specific. In this indictment count 2 charges that the printed matter was of a character to incite murder and assassination. This differentiates the matter from other matters included in the section, and brings it specifically within the amendment of March 4, 1911, which provides that the—

"term 'indecent,' within the intendment of this section, shall include matter of a character to incite arson, murder or assassination."

This designation of the character of the documents is, I think, sufficient, and it is not necessary that the matter be set out in the indictment. Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278.

[2] The remaining counts may be discussed together. On April 6, 1917, 40 Stat. 1, the Congress passed the following:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that the state of war between the

United States and the Imperial German government which has thus been thrust upon the United States is hereby formally declared; and that the President be, and he is hereby, authorized and directed to employ the entire naval and military forces of the United States and the resources of the government to carry on war against the Imperial German government; and to bring the conflict to a successful termination all of the resources of the country are hereby pledged by the Congress of the United States."

Prior to the adoption of the Selective Service Act on the 18th day of May, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k), the law did provide for a militia of the United States, which was classified by the National Defense Act of June 3, 1916, section 57 of which provides:

"The militia of the United States shall consist of all able-bodied male citizens of the United States and all other able-bodied males who have or who shall have declared their intention to become citizens of the United States, who shall be more than 18 years of age and, except as hereinafter provided, not more than forty-five years of age, and said militia shall be divided into three classes, the national guard, the naval militia, and the unorganized militia." Comp. St. § 304.

And it is made the duty of the President, whenever the United States is in danger of invasion from any foreign nation, to call forth such number of the militia as may be deemed necessary by Act Jan. 21, 1903, 32 Stat. 776, as amended May 27, 1908 (35 Stat. 400 [U. S. Compiled Stat. Ann. 1916, vol. 4, p. 4296]). The President was directed by Congress to employ the "entire naval and military forces to carry on war against the Imperial German government." I think, therefore, that it is immaterial whether the Selective Service Act had been passed or not at the time, except as to count 5, if the tendency of the matter was to resist or oppose by force the authority of the United States. Section 6 of the Penal Code (Comp. St. § 10170) provides that:

"If two or more persons * * * subject to the jurisdiction of the United States * * * oppose by force the authority thereof, or by force * * * hinder or delay the execution of any law of the United States * * *"

—they shall be punished. Persons are not denied the right of petition, nor the privilege of criticism, or to say or do anything not in itself unlawful, to prevent the passage of a law, or secure the repeal of one already passed. But after a law is passed it is every man's duty to conform his acts in accordance with the provisions of the law, and he may not, for the purpose of creating sentiment against the wisdom of the law, do anything with intent to procure the violation of the law, in his advocacy of its unwisdom, or for the purpose of repeal. It must be apparent that persons may not advise others to "resist," "refuse," or to "mutiny, defiance, and death," especially after the adoption of the "war status" resolution by the Congress April 6, 1917, and prior to the Selective Service Act of May 18, 1917. There is a wide difference between bona fide criticism or petition, and instigation of others to resistance by force, as charged.

Count 5 charges a conspiracy to violate the Selective Service Act passed May 18, 1917, and sets forth overt acts, some of which were performed prior to the adoption of the act. The defendants contend

·that it is impossible to· conspire to violate a law prior to its passage, and that the doing of an overt act after the passage of the law would not carry· with it the conspiracy entered into prior to the passage of the act. I think this position is reasonable and logical. U. S. v. Crafton et al., Fed. Cas. No. 14,881. However reprehensible an act charged may be, it may not be carried forward and made to offend against a law subsequently passed. But the objection is obviated by the allegation in this count that:

"After said law had been duly enacted, continued in their said conspiracy to prevent, hinder, and delay by force the execution of the law of the United States, in that it was their purpose then and there to resist, and by mutiny, armed resistance, and by bloodshed to oppose the authority of the United States in the execution of said mentioned act. * * *"

The demurrer is overruled.