**ODOM et al. v. UNITED STATES.**
No. 9526.

Circuit Court of Appeals, Fifth Circuit.
Jan. 9, 1941.

Rehearing Denied Feb. 12, 1941.

---

Chris Dixie, of Houston, Tex., for appellants.

Douglas W. McGregor, U. S. Atty., and Eugene J. Wilson, Asst. U. S. Atty., both of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellants A. M. Odom, O. L. Mounce and J. O. Davis were convicted and sentenced for conspiracy to injure James A. Stansbury on account of his having testified as a witness in a court of the United States contrary to 18 U.S.C.A. § 242; and for having endeavored to intimidate and impede Stansbury from testifying as such witness by beating him, with intent to obstruct and impede the administration of justice in a court of the United States, contrary to 18 U.S.C.A. § 241. By a motion for instructed verdict it was and is questioned whether it was sufficiently shown

that Stansbury was at the time of the beating known by the defendants to have testified as a witness in federal court, or that he intended thereafter to testify as a witness, and was beaten for that reason; and language of the court's charge is excepted to, bearing on the question of such knowledge.

The prosecution proved these facts: On February 24, 1939, a strike was called by International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America against North Texas Motor Freight Lines, Inc. The Union's Local Number 745, of which appellants were members, functioned at Houston, Texas, where a terminal of the Freight Lines was under the management of Stansbury. A picket line was maintained at the terminal, appellants being among the pickets. Stansbury sought to obtain other workers to move the freight, and feeling ran high, and there was disorder, but no personal attack on Stansbury. On March 1, the Freight Lines instituted in the District Court of the United States at Dallas, Texas, proceedings for injunction, to which Local 745 and the appellants personally were parties, among others. A preliminary hearing was set for March 4, and appellants were personally served by the Marshal with notice of it. The appellants did not go to Dallas, but the Local was represented there by its President, its Secretary, and an attorney. The hearing lasted till about 11 o'clock at night, Stansbury testifying as a witness about the disorders at Houston. He was not under subpoena. A preliminary injunction was granted and a hearing for permanent injunction set two weeks later. At about 2 o'clock A. M. from a room in the hotel at Dallas occupied by the President and the Secretary of the Local a telephone conversation was had with the home of the Vice-President of the Local at Houston. What was said did not appear. Later on that day, Sunday, March 5, Stansbury drove by automobile to Houston, and at once went to his office at the terminal, noticing one of the appellants, Odom, and an unknown person sitting across the street, but there was no picket line. Ten minutes later Stansbury came. out of the office and found twenty to thirty men congregated, some of whom, including the three appellants, set upon and beat him. Some epithets were used by them, but he heard no reference to the case in court or his being a witness in it. One of his assailants told Stansbury

that he had better get away, because the next time they caught him they were going to kill him. Stansbury did appear as a witness at the next hearing, and testified to this assault on him, but to nothing else. The appellants offered no evidence in explanation or contradiction.

 The two sections of the criminal statutes here involved were expounded in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. They are designed to protect the administration of justice in the federal courts, and those participating therein. Acts of violence, though criminal under State laws, are offenses against the United States only when and because they thus affect the justice of the United States. It is necessary to federal jurisdiction in this case to prove that there was a proceeding in the courts of the United States, and that Stansbury was a witness therein, and that the accused had knowledge of both facts, and intended by beating him either to punish him for past testimony or to prevent him from testifying in the future. One may be a witness within the protection of this statute though he may not be under formal subpoena. If he knows or is supposed to know material facts, and is expected to testify to them, or be called on to testify, he is a witness; and he is such of course when he has already given testimony, though not subpoenaed. Stansbury was clearly enough a witness, both in retrospect and in prospect, to be entitled to protection. That on the second hearing he testified only to the assault upon him, a thing not in his knowledge as a witness until it happened, does not affect the matter. What he previously knew and testified to was dwarfed by and submerged in what he thus came to know, but he was a witness all the time.

 Touching the knowledge of the accused, and their specific intent to deal with Stansbury as a witness, the question is closer. The knowledge necessary is not absolute or direct knowledge that Stansbury had testified or would testify; but information or a reasonably founded belief thereof is sufficient to make the requisite scienter; he being in fact a witness. And nothing is more common in criminal cases than an inference of knowledge and motive from circumstances. If they can be logically inferred from what is proven whether they ought to be inferred and how certain the inference is, is for the jury and not the

judge. The accused here knew there was a proceeding in federal court, and that there was to be a hearing Saturday night, for they were served as parties. They knew the hearing concerned their conduct as pickets, and would probably involve testimony from their adversary at Houston, Stansbury. They could see he was away from his office on Saturday. The telephone call from Dallas from the President or Secretary to the Vice-President of the Union at Houston could easily have afforded full information. There was no picket line Sunday, in obedience to the injunction. Stansbury had never been beaten before, but without giving any new cause for attack, unless by his becoming a witness against them, was almost on sight set upon by a crowd apparently summoned by Odom. That the beating was due to the new testimonial activity of Stansbury is a fair and logical inference. It was in the power of the accused to show by others how and why the crowd was assembled, but they chose silence. While it is possible that the beating was due only to Stansbury's previous efforts to operate his employer's business, the jury might very well conclude that the indictment presented the true reason.

The judge very carefully and fully analyzed the two offenses in his charge, and more than once stated that knowledge of the status of Stansbury as a witness and an intent to interfere with him as such were essential to be proven beyond a reasonable doubt. As to each count however, by way of review, he used this language: "The defendants must have known or must have had reasonable grounds for believing that the case was pending in the United States District Court and that Stansbury was a witness in that case * * * and it must have been for the purpose of attempting to influence, intimidate or impede Stansbury from testifying, etc." We find no error therein. The charge means that the accused must have positively known, or must have believed on reasonable grounds, that Stansbury was a witness, and must have intended to influence or impede him as such. As we have already stated, direct or absolute knowledge is not necessary. What is necessary on this point is the intent to affect the witness as such, and a reasonably founded belief that he is a witness (he being such in fact) sufficiently supports the criminal scienter.

Judgment affirmed.