**UNITED STATES v. PERLSTEIN et al.**
**No. 7794.**

Circuit Court of Appeals, Third Circuit.
Argued Oct. 23, 1941.

Reargued Jan. 5, 1942.

Writ of Certiorari Denied May 4, 1942.
See 62 S.Ct. 1106, 86 L.Ed. ——.

Decided Feb. 20, 1942.

Rehearing Denied March 16, 1942.

Paul M. Salsburg, of Atlantic City, N. J., for appellants.

Joseph W. Burns, of Washington, D. C. (Charles M. Phillips, U. S. Atty., of Trenton, N. J., on the brief), for appellee.

Before BIGGS, CLARK, JONES, and GOODRICH, Circuit Judges and KIRKPATRICK, District Judge.

BIGGS, Circuit Judge.

The primary question with which we are concerned in the appeal at bar is the interpretation of Sections 37 and 135 of the Criminal Code, 18 U.S.C.A. §§ 88 and 241, and of the decision of the Supreme Court in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. There are indeed other questions presented by the appeal but these are of lesser importance. The defendants suffered a former conviction and judgment of sentence upon the same indictment and upon the same count as are here presented for our consideration. We reversed the judgment for the reasons stated in 120 F.2d at page 276, et seq. and ordered a new trial. That trial has now been had and the defendants again have been convicted and sentenced. They have appealed for the second time.

In order that the issues of law may be clear it is necessary to refer rather fully to the first count of the indictment and to give an account of some of the evidence presented at the trial.

The first count of the indictment (the only count with which we are concerned) charges that from the 15th day of October, 1937 and continuously up to and including the date of the filing of the indictment, within the jurisdiction of the District Court of the United States for the District of New Jersey, the appellants and certain other persons, viz., Herbert R. Short and Michael Aluise, conspired corruptly to endeavor to influence, intimidate and impede witnesses in the District Court of the United States for the District of New Jersey and its grand jury and corruptly to obstruct and to endeavor to obstruct "the due administration of justice therein" in violation of Section 135 of the Criminal Code.

JONES, Circuit Judge, and KIRKPATRICK, District Judge, dissenting.

The count charges that from November 1, 1939 until the filing of the indictment Special Investigators of the Alcohol Tax Unit of the Treasury Department of the United States were conducting an investigation to determine whether there had been any violation of the Internal Revenue Laws of the United States in the District of New Jersey and if any persons were guilty of violating these laws; whether during 1937 Short and Aluise had set up an unregistered still in the Garbage Disposal Plant of Atlantic City and whether Short and Aluise were engaged as distillers. The count goes on to allege that during the course of this investigation the investigators questioned John A. Graham, Edward S. Graham, Henry S. Speed and other persons with the intention of causing them to be witnesses for the United States before United States commissioners and before the Grand Jury of the District of New Jersey. The count charges that the grand jury also was inquiring whether there had been any violations of the Internal Revenue Laws of the United States and whether Short and Aluise had been running an unregistered still in the Atlantic City Garbage Disposal Plant, in order that it might return true bills, if the circumstances warranted such action. The count also states that in January and February, 1940 complaints were filed against Short before United States commissioners of the District of New Jersey charging that Short possessed an unregistered still and untaxpaid alcohol at the Garbage Disposal Plant.

In another paragraph of the first count of the indictment it is alleged that Short, Aluise and the appellants as a part of the conspiracy, knowing and expecting that certain persons including John A. Graham were about to be called as witnesses before the United States commissioners and before the grand jury to testify in regard to the matters under inquiry ", * * * would and did corruptly endeavor to influence, intimidate and impede said witnesses by corrupt promises, offers of inducement, and by other means, and would and did counsel, advise and suggest to said witnesses that they testify falsely before [the] Grand Jury with relation to the facts of the matter under inquiry * * * and would and did advise and suggest to said witnesses that they should not identify * * * Herbert R. Short and Michael Aluise before [the] Grand Jury as the persons who had in their possession and custody and under their control said still set up in the * * * Garbage Disposal Plant * * * and falsely to deny before [the] Grand Jury that * * Herbert R. Short and Michael Aluise had any connection with said still."

The count goes on to charge that Short, Aluise and the appellants as part of the conspiracy, well knowing that the grand jury had under inquiry the matters which we have referred to "* * * did corruptly influence, obstruct, impede and endeavor to influence, obstruct and impede the due administration of justice in the said District Court of the United States for the said District of New Jersey by hindering said Grand Jury in ascertaining the true facts and presenting a false state of facts * * * for the purpose of preventing said Grand Jury from obtaining evidence upon which an indictment might be returned against the said defendants Herbert R. Short and Michael Aluise for violation of the internal revenue laws as aforesaid."

The count sets out seven overt acts. Since they are intimately connected with the questions of law before us, we set them out verbatim. They are as follows:

"1. That on or about October 15, 1937, the said defendant Benjamin M. Perlstein had a conversation with one John A. Graham in Atlantic City, New Jersey.

"2. That on or about February 7, 1939, the said defendant Benjamin M. Perlstein had a conversation with said John A. Graham.

"3. That on or about February 21, 1940, the said defendants Michael Aluise and Harry Paul met and had a conversation with said Henry S. Speed in Atlantic City, New Jersey.

"4. That on or about February 24, 1940, the said defendants Herbert R. Short, Michael Aluise, Benjamin M. Perlstein and Harry Paul met and had a conversation with said John A. Graham in Atlantic City, New Jersey.

"5. That on or about February 25, 1940, the said defendants Michael Aluise, Benjamin M. Perlstein and Harry Paul met and had a conversation in Atlantic City, New Jersey.

"6. That on or about March 26, 1940, the said defendant Harry Paul had a conversation with said Henry S. Speed and John A. Graham.

"7. That on or about March 26, 1940, the said defendants Herbert R. Short and

Harry Paul met and had a conversation in Camden, New Jersey.".

■ The indictment was returned by the grand jury upon April 16, 1940. The evidence showed that on October 13, 1937, officers of the New Jersey Department of Alcohol Beverage Control found an unregistered still in operation at the Atlantic City Garbage Disposal Plant, seized it and arrested one Joseph Myers, who was on the premises. A state warrant was thereupon sworn out for the arrest of John A. Graham, the tenant of the Garbage Disposal Plant, who surrendered on October 15, 1937. Both of the appellants who were members of the bar of New Jersey took an active part in the conspiracy. They contended that their activities were those of attorneys engaged in guarding their clients' interests, Perlstein representing John A. Graham, Paul representing Aluise. The evidence presented, however, was such as to enable the jury to draw the conclusion that the appellants and their co-conspirators endeavored to prevent law enforcement agencies of the United States from investigating the operation of the still, the persons who were engaged in that operation and the profits of the enterprise. There was a conspiracy to hide these things and if the evidence be believed, there is no doubt but that the appellants played their parts in it. It is not too much to say that Paul took a very large part in the attempts which were made to keep John A. Graham from disclosing what he knew to the Special Investigators, the United States commissioners and the grand jury. The record shows that Perlstein took a smaller part in the conspiracy, but there was a well defined organization devoted to the stifling of evidence and the acts of one conspirator are admissible therefore against another. If the indictment be held valid, Perlstein must bear the onus of many of the acts and declarations of Paul and Short. See 15 Corpus Juris Secundum, § 74, p. 1105; Pomerantz v. United States, 3 Cir., 51 F.2d 911;

United States v. Bergdoll, D.C., 272 F. 498 and United States v. Stilson, D.C., 254 F. 120.

In general, it must be said that the evidence adduced follows and proves the allegations of the first count of the indictment. The point which we wish to emphasize is this. The conspiracy, which was one to suppress evidence and to keep persons who were familiar with the operation of the still from disclosing what they knew to any investigating agency or body whether of the State of New Jersey or of the United States, was entered into over two years before any proceeding was pending in the District Court of New Jersey. The first two overt acts set forth in the first count had taken place prior to the beginning of the investigation by the Special Investigators of the Alcohol Tax Unit who commenced their work on November 10, 1939. The original complaint to a United States commissioner was filed on January 17, 1940. The Grand Jury of the District of New Jersey began its investigations in the early part of January, 1940. But the last five overt acts set forth in the first count followed in point of time the filing of the complaints to the United States commissioners and the beginning of the investigation by the grand jury. Under these circumstances can the validity of the first count of the indictment be sustained?

Section 135 of the Criminal Code, 18 U.S. C.A. § 241, upon which the answer to this question turns, is set out in the margin.[1] Emphasis must be placed upon certain words used in the statute, viz., "the due administration of justice therein". If we were construing this statute as a matter of original impression we would have held this phrase to be one of enlargement and not of limitation and would have concluded that the statute was designed to punish the obstruction of federal justice whether a proceeding was pending or ever became pending in a court of the United States. The courts, however, have held that the ob-

---

[1] Section 135 of the Criminal Code is as follows:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

struction cognizable by the Act must be in respect to a proceeding brought in the federal courts. See United States v. McLeod, C.C., 119 F. 416 and United States v. Bittinger, D.C., 24 Fed.Cas.No. 14,598. We can find no case in which it was held that interference with persons called before Special Investigators whether of the Treasury Department or some other like instrumentality of the United States was a violation of Section 135. Such an investigation is not a proceeding in a court. The question before us remains the same, however, for the filing of the complaint to the United States commissioners and the investigations of the grand jury followed the beginning of the Treasury Department investigation closely in point of time. The evidence shows clearly that the attempts made by the conspirators to prevent Graham from identifying Short's photograph were directed not only to the obstruction of the Treasury Department investigation but also to the suppression of evidence before the United States commissioners and the grand jury.

The question before us therefore may be stated as follows. Were the appellants properly convicted on a count charging them with conspiracy to obstruct the administration of justice in violation of Section 135 of the Criminal Code when the conspiracy was entered into at a time when there was no proceeding pending in the District Court of New Jersey, though continued into a period when there were proceedings pending in that court, and acts in furtherance of the conspiracy were committed both prior to and after the commencement of the proceedings referred to? The appellants contend that the answer to this question must be in the negative. Their arguments are based primarily upon the decision of the Supreme Court in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419. A recapitulation of the facts and ruling of that case are therefore pertinent.

Section 5399 of the Revised Statutes and section 5440, as amended, 21 Stat. 4, were under consideration in the Pettibone case. Sections 135 and 37 of the Criminal Code, 18 U.S.C.A. §§ 241 and 88, are respectively the successors to the sections named. In the Pettibone case a suit was commenced in a United States Circuit Court by a mining company to enjoin the members of a union from interfering with the working of the company's claims. The injunction issued but while it was in force members of the union conspired to prevent the working of the claims and to compel the discharge of certain employees by intimidating officers and employees of the company. It was charged that these acts constituted an obstruction to the administration of justice in the district court. Motions to quash and demurrers were overruled. The indictment did not allege that the members of the union against whom the injunction had been issued had knowledge of it and the evidence showed clearly that they did not possess such knowledge. After a verdict of guilty, motions in arrest of judgment were made and denied. The Supreme Court allowed a writ of error and reversed the judgment, remanding the cause with instructions to quash the indictment and discharge the defendants. Mr. Chief Justice Fuller stated at pages 206, 207 of 148 U.S., at page 546 of 13 S.Ct., 37 L.Ed. 419, "It seems clear that an indictment against a person for corruptly, or by threats or force, endeavoring to influence, intimidate, or impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, or set out facts that show knowledge or notice, on the part of the accused that the witness or officer was such. And the reason is no less strong for holding that a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court. * * *

"The obstruction of the due administration of justice in any court of the United States, corruptly or by threats or force, is indeed made criminal, but such obstruction can only arise when justice is being administered. Unless that fact exists the statutory offense cannot be committed * * *."

This language, if construed literally, must be deemed to support the appellants' position. It must be remembered, however, that in the Pettibone case the Supreme Court was passing upon a violation of the injunctive process of the circuit court. There could be no violation of the injunction before it was issued and upon analogy to contempt no individual could be found guilty unless he knew or had reasonable cause to know that process had issued. The Supreme Court held that there had to be scienter on the part of the de-

fendants. In the Pettibone case a proceeding was pending and the pendency or non-pendency of a proceeding was not an issue. The appellants in the case at bar argue, however, that since there was no proceeding pending in the district court at the time of the inception of the conspiracy there could be no knowledge of it and that therefore the indictment in the instant case does not state a crime cognizable under Section 135. In our opinion the Pettibone case does not support the appellants' position for reasons which we will point out hereafter.

The Circuit Court of Appeals for the Eighth Circuit followed the substance of the ruling of the Pettibone case in Fulbright v. United States, 91 F.2d 210. In this case the defendant had been charged with and convicted of participation in a conspiracy to harbor and conceal a fugitive from federal process in violation of Section 141 of the Criminal Code, 18 U.S.C.A. § 246. The Circuit Court of Appeals reversed the judgment holding that knowledge that a warrant had been issued for the fugitive was an essential element of the crime to be charged in the indictment and proven by the evidence. There was a proceeding pending, but scienter was not charged to or proven against the defendant. Section 246, however, made the gist of the offense the harboring of a criminal "after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, * * *". This was the basis of the reversal.

In the case of Odom v. United States, 5 Cir., 116 F.2d 996, also relied upon by the appellants, Odom and others were convicted of conspiring to injure a prospective witness on account of his having testified as a witness and in order to prevent him from testifying in the future in a pending proceeding in violation of Sections 135 and 136 of the Criminal Code, 18 U.S.C.A. §§ 241, 242. The Circuit Court of Appeals for the Fifth Circuit stated at page 998 of 116 F.2d, "It is necessary to federal jurisdiction in this case to prove that there was a proceeding in the courts of the United States, and that Stansbury was a witness therein, and that the accused had knowledge of both facts, and intended by beating him either to punish him for past testimony or to prevent him from testifying in the future." In this case there was both a proceeding pending at the time of the inception of the conspiracy and an actual attempt to obstruct justice in that proceeding.

■■ The substantive offense punished by Section 135 is the obstruction of justice or the endeavor to obstruct it before a United States commissioner or in a court of the United States. See Bosselman v. United States, 2 Cir., 239 F. 82; Samples v. United States, 5 Cir., 121 F.2d 263, and Odom v. United States, supra. A criminal conspiracy is a combination between two or more persons to do an unlawful or criminal act, or to do a lawful act by criminal or unlawful means. Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S. Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196. The conspiracy in the case at bar falls within the first category stated. The end in view was the obstruction of justice, both state and federal. We think that the evidence shows this to have been true in 1937 at the inception of the conspiracy. It was true beyond peradventure in the latter part of the year 1939 if the testimony of John A. Graham is to be believed.[2] Assuming for the purpose of argument that the substantive offense could not have been committed by any one of the conspirators at the time of the inception of the conspiracy for justice in respect to the still operations was not then being administered in the District Court of New Jersey, but this fact could not prevent the existence of a conspiracy to obstruct justice to be administered in that court in the future.

[2] Graham testified that in December, 1939, he went to see Michael Aluise "Down at the Fortune Teller's place on the Boardwalk". He testified that Aluise said to him on this occasion, "This is pretty tough now, them stepping in." Graham also stated that Aluise asked him if "they" had shown Graham his picture. Graham replied, "yes," and that he had told "them" that Aluise was a working man "around there". We think it is clear from a careful examination of the testimony that the witness was referring to the investigations of the Special Investigators of the Alcohol Tax Unit of the Treasury Department who were then engaged in looking into the operation of the still in the Garbage Disposal Plant. Paul was present at this meeting. Both appellants were present at a subsequent meeting in Atlantic City near the Temple of Knowledge. Graham brought a friend, one Cannon to the meeting. Perlstein protested, saying according to Graham, "There is enough of us involved in it now."

A somewhat analogous situation was presented in the case of Williamson v. United States, 207 U.S. 425, 446, 447, 28 S.Ct. 163, 170, 52 L.Ed. 278. In the Williamson case R.S. Section 5440 was directly under consideration. The appellant contended that there was no federal statute which prescribed a punishment for the mere attempt of an individual to procure the commission of perjury. In respect to this contention, Mr. Justice White stated, "But the proposition wholly fails to give effect to the provisions of the conspiracy statute (U.S.Rev.Stat. § 5440 * * *), which clearly renders it criminal for two or more persons to conspire to commit any offense against the United States, provided only that one or more of the parties to the conspiracy do an act towards effecting the object of the conspiracy. In other words, although it be conceded, merely for the sake of argument, that an attempt by one person to suborn another to commit perjury may not be punishable under the criminal laws of the United States, it does not follow that a conspiracy by two or more persons to procure the commission of perjury, which embraces an unsuccessful attempt, is not a crime punishable as above stated. The conspiracy is the offense which the statute defines, without reference to whether the crime which the conspirators have conspired to commit is consummated." See, also, Becher v. United States, 2 Cir., 5 F.2d 45, certiorari denied 267 U.S. 602, 45 S.Ct. 462, 69 L.Ed. 808.

 We can see no reason why persons who conspire together to obstruct justice in a proceeding before a United States Commissioner or in a district court which they expect or fear will be instituted should not incur the penalties prescribed by Section 37 of the Criminal Code even if it be assumed that they could not be found guilty of the substantive crime described in Section 135, provided that one of them does an overt act designed to consummate their purpose and the commission of that act affects a pending proceeding.

 Let us imagine an example. Two or more persons enter into a written agreement with each other that they will prevent witnesses to the commission of a crime against the laws of the United States from going before a federal grand jury and stating what they have seen. Each of the conspirators then does an overt act in furtherance of the conspiracy, but no grand jury has as yet been impanelled to investigate the crime. Assuming that none of them could be indicted under Section 135 of the Criminal Code because they have done nothing to affect the due administration of justice in a proceeding, could they not be indicted for a conspiracy under Section 37? The United States contends that they could be and that a conviction based upon an indictment setting forth such an offense should be sustained. It is not necessary to go so far in the case at bar. Let us add one more element to the example which we have given. After the conspirators have entered into their agreement a proceeding is actually instituted before a federal grand jury. Then the conspirators in furtherance of their original policy endeavor to influence and do influence a person who is about to testify before that grand jury. We entertain no doubt that an indictment alleging these elements and charging the conspirators with a conspiracy to violate the provisions of Section 135 should be sustained.[3] The

---

[3] On June 10, 1872 Congress passed "An Act to prevent and punish the Obstruction of the Administration of Justice in the Courts of the United States," 17 Stat. 378. This became R.S. Section 5404, which in turn was consolidated with R.S. Section 5399, Act of March 2, 1831, 4 Stat. 488, to form Section 135 of the Criminal Code, 35 Stat. 1113, 18 U.S. C.A. § 241.

In the debate on the bill in the House of Representatives on June 7, 1872, Mr. Peters who was in charge of the bill, in response to an inquiry by a member of the House questioning the "very terrible powers" proposed to be given to the courts of the United States by the legislation, stated that, "The United States courts have no common law jurisdiction. This bill is intended to confer upon them the same jurisdiction in regard to this offense that other courts have." See Debates in House of Representatives, 2nd Sess., 42nd Congress, June 7, 1872. The Congressional Globe, p. 4319.

In view of what Congressman Peters said, it should be noted that a conspiracy to obstruct justice was and is an indictable offense at common law. People v. Tenerowicz, 266 Mich. 276, 282, 253 N. W. 296, 299. Bishop on Criminal Law, 9th Ed., § 219, p. 148, "Cheats at Common Law." The condition precedent upon which the appellants insist, namely, that the indictment must charge that a judicial proceeding is pending at the time

facts in the example just given are analogous to those of the case at bar. After the conspiracy was entered into in the instant case a federal proceeding became pending. The conspirators were aware of it and endeavored to influence and did influence a witness who they knew was about to appear in those proceedings. The count in its fifth paragraph so charges Short, Aluise, Perlstein and Paul. The conspiracy is charged as a continuing conspiracy and we think it is not an answer for the appellants to refer to the words of the Supreme Court in the Pettibone case that " * * * such obstruction [to the due administration of justice] can only arise when justice is being administered." While it is true that the obstruction can arise only when justice is being administered, that is to say when a proceeding is pending, there is nothing to prevent a conspiracy to obstruct the due administration of justice in a proceeding which becomes pending in the future from being cognizable under Section 37.

■ In the case at bar the jury was justified in drawing the conclusion from the evidence that Short, Aluise, Perlstein and Paul intended to obstruct the administration of justice in any proceeding, federal or state, then pending or which should become pending, relating to the operation of the still at the Atlantic City Garbage Disposal Plant, and, in furtherance of that conspiracy did obstruct justice when proceedings actually became pending in the District Court of New Jersey.

For these reasons we cannot accept the contentions of the appellants. If we did so we would apply a wooden and stilted construction to a statute vital for the protection of our federal courts.

Section 5440 of the Revised Statutes as amended by the Act of May 17, 1879, c. 8, 21 Stat. 4, now Section 37 of the Criminal Code, has repeatedly received a construction analogous to that which we have placed upon it. In the case of Bailey v. United States, 5 Cir., 5 F.2d 437, appeal dismissed 269 U.S. 551, 589, 46 S.Ct. 12, 70 L.Ed. 427, the indictment alleged a conspiracy continuing from July, 1921, to August, 1923, to smuggle liquor into the United States in violation of the Revenue Act of 1922 (Tariff Act) 42 Stat. 858, which had not been passed at the time the conspiracy was formed. In the case of Nyquist v. United States, 6 Cir., 2 F.2d 504, certiorari denied 267 U.S. 606, 45 S. Ct. 508, 69 L.Ed. 810 several persons were charged with a conspiracy to violate the National Motor Vehicle Theft Act, the Dyer Act, 41 Stat. 324, 18 U.S.C.A. § 408, despite the fact that the conspiracy was formed and overt acts had taken place before the passage of the statute denouncing the substantive offense. In all these cases the convictions were sustained.

It is interesting to note that the Court of Criminal Appeal as recently as Decem-

of the inception of the conspiracy in order to be sustained, seems simply not to have been thought of. For typical cases in which such a defense might have proven pertinent see People v. Tenerowicz, supra; People v. Saunders, 25 Mich. 119; State v. Shooter, 8 Rich., S. C. 72; Sydenham v. Keilaway, Cro.Jac. 7, 79 E.R. 7; Regina v. Best, 1 Salkeld 174, 91 E.R. 160; Rex v. Macdaniel, 1 Leach 44, 168 E.R. 124. Compare Claridge v. Hoare, 14 Ves.Jun. 59, 33 E.R. 443.

At common law indictments to obstruct justice were and are sustainable despite the fact that no judicial proceeding was pending at the time of the inception of the conspiracy. See State v. De Witt, 2 Hill 282, 27 Am.Dec. 371. In this case the defendants conspired to destroy a will with the intent to defraud the devisees and legatees. The judicial proceeding which they were endeavoring to obstruct was administration of the estate of the dead man. In the cited case while the Supreme Court of South Carolina held the statute of Edw. I to be in force in South Carolina it also stated its view that the statute did nothing more than express the common law. Cited by the court in State v. De Witt is Taylor's and Robinson's case, 2 East P.C. 1010, 1 Leach 37. In this case there was an indictment for a conspiracy to obstruct justice, the conspiracy being one to raise a spurious title to property by impersonating a marriage with the owner. The impersonation took place while the owner of the property was alive and the proceeding which the conspirators sought to obstruct was the administration of his property after his death. In Southern Express Co. v. Commonwealth, 167 Ky. 480, 180 S.W. 839, an indictment to obstruct justice was sustained over objection. The indictment charged a conspiracy to remove corporate records knowing that such records would be called for by a grand jury which was about to convene.

ber 20, 1937, has taken a view precisely similar to that which we have expressed. See Rex v. Sharpe, Rex v. Stringer, 1938, 26 Cr.App.Rep. 122, 1 All.E.R. 48. The indictment in the cited case charged an attempt to persuade a person to make an untrue statement concerning an automobile accident. The appellant contended that the indictment disclosed no offense known to the law because at the time of the alleged conspiracy there were no proceedings pending in respect to the accident; that a conspiracy to stifle a prosecution or to obstruct the course of public justice was a crime only when there were proceedings pending at the time of the conspiracy.

Mr. Justice (now Lord Justice) du Parcq, stated in sustaining the conviction, p. 51, "It is not disputed that there is an offense of conspiracy to obstruct the course of public justice. That offense is laid down by the legislature under the Criminal Procedure Act, 1851, § 29. All that is left, therefore, of the argument to the judge, with which this court has fully acquainted itself, is that there can be no offense of conspiracy to prevent the course of public justice unless proceedings are pending or have commenced. In other words, a crime has not been committed by a person who conspires with others to help him to conceal what has taken place, and persuades other persons to make untrue statements, unless proceedings have already begun. That seems to this court to be a hopeless proposition, and so absurd that it does not form a part of the law of this country." The statute referred to, Section 29 of the Criminal Procedure Act, 1851, while not precisely like Section 135 of the Criminal Code of the United States bears a very substantial resemblance to it.[4]

In People v. McCue, 139 Misc. 790, 250 N.Y.S. 161, 162, a defendant was charged by an indictment with conspiracy "to commit an act injurious to the * * * public morals and for the perversion and obstruction of justice and of the due administration of the laws * * *" in that he caused false testimony to be given as to alleged adultery in a divorce suit. The indictment then set forth seven overt acts and alleged as in the case at bar that each of them was done in furtherance of the conspiracy. The defendant demurred on the ground that the indictment on its face charged no crime in that a conspiracy to procure false testimony in an action that was not begun at the time of the inception of the conspiracy was not criminal. The Court of General Sessions upheld the indictment, Justice Nott stating at page 163 of 250 N.Y.S., "It is evident that the indictment cannot be supported as a conspiracy to do an act injurious to public morals but charges an act for the perversion and obstruction of justice and the due administration of the law."

He went on to say, "* * * in the case of People v. Chase, 16 Barb. [N.Y.], 495, it was held that a conviction of conspiracy for the perversion or obstruction of justice would be sustained where the defendant had procured a witness to withdraw and conceal herself in order to prevent being called as a witness before the grand jury, prior to the presentation of the case to the grand jury.

"In the case of People v. Spiro, 71 Misc. 362, 129 N.Y.S. 183, an indictment for a similar offense under the same subdivision of the statute was sustained on demurrer, where the conspiracy was entered into between certain mortgagors who agreed to hinder and obstruct the mortgagee from obtaining a judgment of foreclosure, if and when such an action of foreclosure might be brought.

* * * * * *

"Under the above decisions, therefore, I am of the opinion that the fact that the action had not been begun at the time of the formation of the alleged conspiracy does not make the indictment bad on demurrer."

The statute under which the indictment was brought was section 580 of the Penal Law of New York. It also is analogous to Section 135 and is set out below.[5]

---

[4] Section 29 of the Criminal Procedure Act 1851 is as follows:

"Whenever any person shall be convicted of any one of the offenses following, as an indictable misdemeanor; that is to say, any cheat or fraud punishable at common law; any conspiracy to cheat or defraud, or to extort money or goods, or falsely to accuse of any crime, or to ob-struct, prevent, pervert, or defeat the course of public justice; * * * it shall be lawful for the court to sentence the offender to be imprisoned. * * *"

3 Chitty's English Statutes, 6th Ed., pp. 262, 263; 4 Halsbury's Statutes of England, pp. 529, 531.

[5] "If two or more persons conspire: * * *

The appellants contend also that the crime was completed before the inception of any federal proceedings because the first two overt acts alleged in the indictment took place before the commencement of the proceedings before the United States commissioners and the grand jury. It is true that the conspiracy was "complete" with the commission of the first overt act in the sense that that word is ordinarily used in respect to a conspiracy, but the conspiracy had not come to an end. Other overt acts are alleged and were proved to have occurred after the commencement of the proceedings just referred to. The jury was entitled to draw the conclusion that it was the intention of the conspirators that the conspiracy should continue in existence until all danger of the prosecution of Short and Aluise had passed. It has been frequently stated that once a conspiracy is proved it must be deemed to continue until the contrary is established. Marino v. United States, 9 Cir., 91 F.2d 691, 695, 113 A.L.R. 975; Coates v. United States, 9 Cir., 59 F.2d 173, 174.

We do not see how the appellants can sustain the contention that their offense, if any, was misprision of felony. Misprision is nothing more than a word used to describe a misdemeanor which does not possess a specific name. See 2 Bouvier's Law Dictionary, Rawle's, Third Rev., (8th Ed.) 2225. Bouvier also states that misprision of felony is the concealment of felony without giving any degree of maintenance to the felon, citing Section 5390 of the Revised Statutes of the United States. An examination of R.S.Section 5390, Section 146 of the Criminal Code, 35 Stat. 1114, 18 U.S.C.A. § 251 [6] makes it clear that the first count of the indictment in the case at bar does not charge or attempt to charge misprision of felony.

We have dealt at length with these questions because we considered them to have substance and to deserve careful study, but we think as a matter of law the conviction of the appellants upon the first count may be sustained on far simpler grounds. Assuming that the conspiracy could not have constituted an offense prior to the inception of proceedings before the United States commissioners and the federal grand jury, the first count of the indictment in fact and in law charges the existence of a conspiracy after the inception of those proceedings. While it must always be alleged and proved that the crime was committed prior to the date of the indictment, within the period of limitation, and within the jurisdiction of the court, Underhill's Criminal Evidence, Niblack's 4th Ed., pp. 107, 108, § 86, any variance between pleading and proof is immaterial unless the indictment fails to inform a defendant fully and correctly of the criminal act with which he is charged, taking into consideration the proof which is introduced against him. In the case at bar the substance of this test is met by the allegations of the count and the proof offered in support of them. The appellants were not misled in making their defense, nor were they in any danger of being put twice in jeopardy. The appellants have suffered no injury because they were compelled to meet proof offered as to their conduct prior to the beginning of the federal proceedings. If the United States had not alleged the time of the commencement of the agreement or conspiracy, the defendants would have been entitled to elicit this information by bills of particulars and it would have been error to have refused the information thus sought. So viewed, the allegations of the count are sufficient and the proof adequate to sustain the judgment.

Upon the prior appeal the appellants contended that the trial court had erred in refusing to grant a motion to quash the indictment based upon the ground that the indictment had been found by the grand jury after the expiration of the term. This court upon the first appeal overruled this assignment of error and sustained the trial

---

"6. To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws,

"Each of them is guilty of a misdemeanor."

39 McKinney's Consolidated Laws of N. Y. Annotated. Art. 54, § 580(6).

[6] Section 146 of the Criminal Code is as follows:

"Whoever, having knowledge of the actual commission of the crime of murder or other felony cognizable by the courts of the United States, conceals and does not as soon as may be disclose and make known the same to some one of the judges or other persons in civil or military authority under the United States, shall be fined not more than $500, or imprisoned not more than three years, or both."

court's refusal to grant the motion. See 120 F.2d 276. The motion was renewed at the outset of the second trial, was denied and after the conviction of the appellants, motions in arrest of judgment and for a new trial were made upon their behalf upon substantially the same ground, viz., that the grand jury's jurisdiction to indict had come to an end prior to the return of the true bill. This same ground constitutes the basis of one of the assignments of error now before us. We think that the appellants' contentions in this regard are without merit and we adopt the very cogent reasoning of the District Court upon this point. See United States v. Perlstein, 39 F.Supp. 965.

We have considered carefully the remaining assignments of error and the argument of the appellants' counsel in respect to them. We conclude that the points raised are without merit and require no discussion in this opinion.

Accordingly, the judgment of the court below is affirmed.

JONES, Circuit Judge (dissenting).

I think that the decision in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419, plainly rules the question fundamentally here involved.

There appears to be no logical escape from the conclusion that refusal to apply to the facts of this case the rule of the Pettibone case works approbation of a conviction obtained upon a federal indictment which utterly failed to charge the defendants with an offense against the laws of the United States. If that be so, then obviously the disposition which this court now makes of the instant appeal far transcends in its effect generally the importance of the case to the parties immediately concerned.

The indictment, which was returned on April 16, 1940, alleged in count 1 that the appellants and two other defendants "from on or about the 15th day of October, 1937, and continuously thereafter up to and including the date of the filing" of the indictment "did * * * knowingly * * * conspire * * * and agree together * * * to influence, intimidate and impede witnesses in the District Court of the United States for the District of New Jersey, and the Grand Jury thereof, and corruptly * * * to influence, obstruct and impede the due administration of justice therein, in violation of 18 U.S.C. § 241 [Sec. 135 of the Criminal Code]," by and in the means and manner as alleged in the indictment.[1]

According to the allegations of the indictment, an investigation was begun on November 1, 1939, by Special Investigators of the Federal Alcohol Tax Unit with a view to discovering violations of the laws of the United States in the District of New Jersey by ascertaining the identity of the owners and possessors of a certain unregistered still and a quantity of finished untaxed alcohol which had been seized in Atlantic City, New Jersey, by State enforcement officers on October 13, 1937. The investigation resulted in the filing of a complaint before a United States Commissioner on January 17, 1940, and a second complaint before another Commissioner on February 14, 1940, and an inquest by the Grand Jury for the District of New Jersey for the December Term 1939 as extended by order of court entered "on the 11th day of January, 1940." The indictment further alleged that the appellants and the two other defendants, in fulfillment of the conspiracy, corruptly influenced, intimidated and impeded three named witnesses who they knew were about to be called before the Commissioners and the Grand Jury in connection with the investigation and that, thereby, they obstructed the due administration of justice in the District Court of the United States for the District of New Jersey.

It therefore clearly appears that the indictment charged the defendants with a conspiracy "on or about the 15th day of October, 1937" (contrary to Sec. 37 of the Criminal Code, 18 U.S.C.A. § 88) to intimidate and impede witnesses and to obstruct the due administration of justice *in a court of the United States or before a United States Commissioner* (in violation

---

[1] The indictment now embraces only the one count. Originally, there was a second count which charged the defendants (appellants and two other persons) with a conspiracy to operate an unregistered still in violation of federal statutes. The second count dropped out of the case upon a former trial so far as the present appellants are concerned. At that time, the trial court directed the acquittal of the one appellant on the second count and the jury returned a verdict of not guilty as to the other appellant on the same count.

of Sec. 135 of the Criminal Code) notwithstanding that no such proceedings were instituted for more than two years after the formation of the alleged conspiracy.

The indictment then specified seven overt acts, the first of which was alleged to have been committed on October 15, *1937*, and the second on February 9, *1939*,—both well prior to the institution of the proceedings before the Commissioners and the Grand Jury, or even before the commencement of the investigation by the Special Investigators of the Alcohol Tax Unit. Thus, according to the indictment, the alleged conspiracy, by virtue of the statute's prescription with respect to the commission of an overt act (Sec. 37 of the Criminal Code), became an indictable and punishable offense more than two years before there was any proceeding in a United States court or before a Commissioner in respect whereof the appellants could either have intimidated witnesses or obstructed justice as alleged in the indictment.

The government's proofs at trial conformed with the allegations of the indictment as to the formation of the conspiracy on October 15, 1937, the commission of an overt act on the same day, as well as the commission of a similar act on February 9, 1939, and the commencement of the proceedings before the Commissioners and the Grand Jury for the District of New Jersey in January of 1940. In their brief on this appeal, counsel for the government speaking with relation to the proofs at trial affirm that "It was established that the conspiracy to endeavor to influence witnesses and obstruct the due administration of justice began on October 13, 1937, immediately after the still was raided."

In short, the appellants were charged and found guilty of having conspired to commit a specific offense against the United States at a time when, under the allegations of the indictment, as well as under the proofs at trial, no such offense was committable.

The defectiveness of the indictment and the infirmity of the proofs at trial in the particulars indicated were raised in the court below by the defendants' motions to quash and in arrest of judgment. Both of these motions were overruled. The action of the learned trial court in such regard was assigned here for error on the pending appeal. However, this court now overrules the assignments and affirms the judgment. To do so, the majority necessarily hold that the pendency of a proceeding in a court of the United States or before a Commissioner is not a prerequisite to an indictment for conspiring to intimidate witnesses and to obstruct justice "therein" in violation of Sec. 135 of the Criminal Code. That conclusion seems to me to be directly in the teeth of the ruling of the Supreme Court in the Pettibone case.

The report of the Pettibone case shows that an injunction had issued out of a United States court in an equity suit involving a labor dispute; that certain of the respondents against whom the injunction was directed violated its restraints; and that thereupon they were indicted for conspiring (contrary to R.S. § 5440, now Sec. 37 of the Criminal Code) to obstruct justice in a proceeding (the injunction suit) in a court of the United States in violation of R.S. § 5399, now Sec. 135 of the Criminal Code. The indictment in the Pettibone case failed to allege that the defendants knew or had notice of the existence of the injunction, i.e., that justice was being administered in a court of the United States. The Supreme Court reversed the judgment of guilt and remanded the case to the District Court with directions to quash the indictment and discharge the defendants. In so doing, the Court held at page 206 of 148 U.S., at page 546 of 13 S.Ct., 37 L.Ed. 419, that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court." And further, at page 207 of 148 U.S., at page 546 of 13 S.Ct., 37 L.Ed. 419, the Supreme Court said that "such obstruction can only arise when justice is being administered. *Unless that fact exists* the statutory offense cannot be committed, * * *." (Emphasis supplied.)

The crime dealt with in the Pettibone case was precisely the same character of crime charged against the defendants in the instant case. But, as we have already seen, there was a proceeding actually pending in a court of the United States at the time of the alleged conspiracy in the Pettibone case, while here there was none, nor was there any for more than two years after the conspiracy allegedly had been matured into an indictable offense by the

commission of an overt act. A fortiori, the rule in the Pettibone case should be applicable here.

No distinction between the Pettibone and the instant case is logically admissible on the basis asserted that "in the Pettibone case the Supreme Court was passing upon a violation of the injunctive process of the district court". That case was *not* concerned with "a violation of the injunctive process" of any court. What the Pettibone case dealt with was an alleged conspiracy to obstruct the due administration of justice in a court of the United States and the allegata and probata required to support the charge. Nor can it be of any materiality to the Pettibone decision that the justice in that case, at whose obstruction the alleged conspiracy was aimed, was being administered in a civil rather than in a criminal proceeding. The thing which the statute (Sec. 135 of the Criminal Code) makes criminal, in presently relevant regard, is the intimidation of witnesses or the obstruction of justice in a court of the United States, regardless of whether the justice there being administered is at law, either civil or criminal, in equity, in admiralty, or in bankruptcy. As no valid reason is advanced why "the Pettibone case does not support the appellants' position," I think it continues to rule where, as here, Secs. 37 and 135 of the Criminal Code are involved. And so it has been recognized elsewhere.

In Odom v. United States, 5 Cir., 116 F.2d 996, the defendants had set upon and beaten one Stansbury, who had been a witness in a federal court and expected to testify thereafter in the same cause. The Court of Appeals, after pointing out at page 998 of 116 F.2d that "The two sections of the criminal statutes here involved were expounded in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419," said that "It is necessary to federal jurisdiction in this case to prove that there was a proceeding in the courts of the United States, and that Stansbury was a witness therein, and that the accused had knowledge of both facts, * * *." True enough, the conviction in the Odom case was sustained, but that was because there was proof from which the jury could find the requisite scienter. The rule there applied respected, none the less, the requirements of the Pettibone decision under which it must be taken as settled that knowledge or notice of the pendency of a proceeding in a court of the United States or before a Commissioner is necessary for a violation of Sec. 135 of the Criminal Code and, by the same token, is a requisite averment of an indictment for conspiracy to violate Sec. 135.

The need for averment and proof of scienter in order to sustain an indictment and conviction for the substantive offense under Sec. 135 has been recognized generally[2] and will hardly be disputed. Manifestly, without knowledge or notice of the pendency of a proceeding in a court of the United States, there can be no intent to obstruct the due administration of justice "therein". Yet "the specific intent to violate the statute must exist to justify a conviction * * *." That was said in the Pettibone case at page 207 of 148 U.S., at page 547 of 13 S.Ct., 37 L.Ed. 419, where, it will be remembered, the question present related to a *conspiracy* to violate Sec. 135. How, then, can scienter be alleged or proven when the thing whereof one need have knowledge or notice does not exist? Such is this very case. Under the circumstances obtaining, the failure of the indictment to allege the defendants' knowledge or notice of the requisite proceeding is readily understandable. In fact, the omission thereof in this case was made even more "advisedly" than it was in the Pettibone case where there was a proceeding actually pending. In any event, the failure to allege scienter in the Pettibone case was fatal to the indictment in that case. It can be no less fatal here where there was no proceeding about which to conspire.

However, it is argued that, assuming a conviction for the substantive offense under Sec. 135 could not be sustained on the facts alleged in the indictment in this case, still, by some legal alchemy, when Sec. 135 is applied in combination with the conspir-

[2] Walker v. United States, 8 Cir., 93 F.2d 792, 795; Kloss v. United States, 8 Cir., 77 F.2d 462, 464; Genna v. United States, 7 Cir., 293 F. 387; United States v. McLeod, C.C.N.D.Ala., 119 F. 416, 418; United States v. Armstrong, D.C.S.D.Cal., 59 F. 568, 569; United States v. Kee, D.C.S.C., 39 F. 603, 604; United States v. Bittinger, D.C.W.D.Mo., 24 Fed.Cas. No.14,598; Zoline, Federal Criminal Law and Procedure (1921) § 796.

acy statute, there emerges an otherwise undeclared federal offense, namely, a conspiracy to obstruct justice without regard for any proceeding in a court of the United States or before a United States Commissioner. How can that be? Certain it is that the conspiracy statute, when applied in conjunction with Sec. 135, does not operate to withdraw the necessity for averment and proof of any of the elements requisite to a charge of the substantive offense. Cf. Gebardi v. United States, 287 U.S. 112, 123, 53 S.Ct. 35, 77 L.Ed. 206, 84 A.L.R. 370. It is not a crime under the terms of Sec. 37 to conspire to commit that which a federal statute does not denounce as an offense against the United States. In United States v. Biggs, 211 U.S. 507, 521, 29 S.Ct. 181, 185, 53 L.Ed. 305, the Supreme Court rejected the contention that "it is unlawful under the [conspiracy] statute to conspire to have that done which the [substantive] statute did not prohibit * * *." In Fulbright v. United States, 8 Cir., 91 F.2d 210, 212, the court said that "If the act is not prohibited by Congress, it is not unlawful to conspire to do it." And, in Fain v. United States, 8 Cir., 209 F. 525, 531, it was said that "It is neither criminal nor unlawful to do or conspire to do that which the law does not prohibit * * *." Consequently, it is not possible under the federal statute (Sec. 37) unlawfully to conspire to commit an offense which, under the facts averred and proven, could not be committed under the requirements of the statute defining the substantive offense.

The question here involved is not to be solved by confusing the federal crime of conspiracy to obstruct justice in a court of the United States with the crime of perverting or obstructing justice without regard for the particular place where justice is being administered, which is an offense in some jurisdictions either at common law or by local statute. Such are the cases of Rex v. Sharpe and Rex v. Stringer, 26 Cr.App.Rep. 122, 1 All.E.R. 48, and the New York County General Sessions case of People v. McCue, 139 Misc. 790, 250 N.Y.S. 161, which the majority cite and quote from in extenso. Those cases can have no bearing upon the meaning and effect of a federal statute. They do not even furnish comparable basis for an argument by analogy. To say, as do the majority, that "The end in view [of the conspiracy at bar] was the obstruction of justice, both state and federal" is not germane to the problem before this court and only further illustrates the failure to discriminate between the relevant federal crime (conspiracy to obstruct justice in a court) and the unrelated crime in other jurisdictions of conspiring to obstruct justice.

There is no federal statute or statutes which denounce simply the obstruction of justice. And, of course, what a federal statute does not make criminal is not an offense against the United States. As is well recognized, there are no common law offenses against the United States. United ed States v. Eaton, 144 U.S. 677, 687, 12 S.Ct. 764, 36 L.Ed. 591. In no event could the legislative history to which the majority make reference in a footnote, even if pertinent, be deemed to invite extension of the congressional intent beyond the plain words of the statute and, certainly, not so as to embrace, thus facilely, common law crimes within federal offenses.

A necessary corollary of this court's ruling in the instant case is that an indictment and conviction for a conspiracy to intimidate witnesses or to obstruct justice in a court or before a commissioner may be sustained even though such a proceeding in material respect is never instituted. Government counsel freely conceded both by brief and at bar that such is indeed the government's contention. This concession is but the necessary concomitant of a rule which would confirm guilt of conspiracy to obstruct the due administration of justice in a court of the United States before any relevant proceeding is instituted therein. Yet, the conspiracy made punishable by Sec. 37 of the Criminal Code occurs when the minds of the parties thereto meet in agreement for the attainment of the illegal object by concert of action. The crime does not lie in the recurrent acts subsequently performed by one or more of the conspirators in furtherance of the object of the conspiracy. Proof of an overt act is necessary because of the statute's specific requirement thereof as a prerequisite to an indictment and conviction for the conspiracy. Hyde v. United States, 225 U.S. 347, 359, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614. The overt act marks the passing of the locus penitentiae. United States v. Britton, 108 U.S. 199, 205, 2 S.Ct. 531, 27 L.Ed. 698. And, immediately consequent upon the first overt act, the conspiracy passes from words or understanding to criminally

culpable conduct. The illegal combination or concert being the offense of conspiracy, the Supreme Court said in the Britton case, supra, at page 205 of 108 U.S., at page 534 of 2 S.Ct., that it is "a rule of criminal pleading that in an indictment for conspiracy under section 5440 [now Sec. 37, Criminal Code], the conspiracy must be sufficiently charged, and that it cannot be aided by the averments of acts done by one or more of the conspirators in furtherance of the object of the conspiracy."

In the instant case the indictment alleges that the conspiracy was entered into "on or about the 15th day of October 1937" and further that on the same day (specifically October 15, 1937) an overt act was committed in furtherance of the object of the conspiracy by one or more of the defendants. From this, it necessarily follows that the defendants were as indictable for the alleged conspiracy on October 15, 1937, as they ever were at any time thereafter; and that conspiracy is the one and only offense charged by the indictment. It is apparent, therefore, that if the indictment in this case be held valid, the defendants could have been indicted, tried, convicted and have served a sentence for the conspiracy prior to the institution of the proceedings before the Commissioners or in the United States Court in January of 1940. Obviously in such circumstances the ultimate proceeding was wholly immaterial to the indictment and conviction. In order to arrive at a rule which produces the situation just indicated it is necessary to disregard the plain words of the statute and the meaning heretofore attached to them by the Supreme Court.

The thing at which the statute (Sec. 135) is directed is the intimidation of witnesses "in any court of the United States or before any United States commissioner" or the obstruction of "the due administration of justice *therein* * * *." (Emphasis supplied.) Wherein? Necessarily, "in any court of the United States or before any United States commissioner". Such has been the considered interpretation of the word "therein", as used in the statute, with respect to its plainly intended reference. See United States v. McLeod, C.C.N.D. Ala., 119 F. 416, at page 419, where the court said that "This statute does not create the offense of obstructing justice in general or in the abstract." That is a clear recognition of the effect of the crucial limitation prescribed by the words of the statute. In the McLeod case, the court further said at page 417 of 119 F. that "But for the restraining influence of the word 'therein,' the words 'due administration of justice' might perhaps be held to include practices subversive of the general administration of justice, regardless of their effect upon any particular case." While the majority of this court cite and apparently accept the view expressed in the McLeod case, supra, they then go on to say that "If we were construing this statute as a matter of original impression we would have held this phrase ["due administration of justice therein"] to be one of enlargement and not of limitation * * *." For what reason? The word "therein" prescribes a qualification which may not be ignored. Moreover, the statute is penal and, therefore, not to be enlarged by any supposed intendment. Cf. Todd v. United States, 158 U.S. 278, 282, 15 S.Ct. 889, 39 L.Ed. 982.

If a pending proceeding in a court of the United States or before a United States Commissioner were not necessary to a charge of intimidating witnesses or of obstructing the due administration of justice therein, then the further ruling in the Todd case, supra, would be wanting in justification. In that case, the Supreme Court reversed the District Court's order, overruling a demurrer to the indictment, because the indictment alleged a conspiracy to intimidate witnesses in a proceeding before a United States Commissioner when at that time (1895) the then relevant statute (R.S. § 5406) embraced no more than a conspiracy to intimidate witnesses "in any court of the United States" without mention of United States Commissioners. As a consequence, the Supreme Court there held at page 284 of 158 U.S., at page 891 of 15 S.Ct. that "* * * As a preliminary examination before a commissioner cannot be considered a case *pending* in any court of the United States, it follows that this indictment is fatally defective, and charges no offense against the laws of the United States." (Emphasis supplied.) Patently, if a pending proceeding had not been considered necessary to an indictment under R.S. § 5406 for conspiracy to intimidate witnesses, it would have been wholly immaterial in the Todd case where the proceeding, if any, obtained. R.S. § 5406 was thereafter amended by Act of March 4, 1909, c. 321, § 136, 35 Stat. 1113,

18 U.S.C.A. § 242, so as to embrace a conspiracy to intimidate witnesses "in any examination before a United States commissioner" and, as so amended, became Sec. 136 of the Criminal Code. The history of Sec. 135 of the Criminal Code, with which we are here concerned, is identical, in such regard, with the history of Sec. 136. So that what the Supreme Court held with respect to R.S. § 5406 in the Todd case is equally pertinent to R.S. § 5399, the predecessor of Sec. 135.

The ultimate filing of the complaints before the Commissioners in January and February of 1940 and the institution of the Grand Jury investigation about the same time can hardly supply the proceeding contemplated by the statute in respect whereof the alleged conspiracy could have been formed in October of 1937. If such were the case, then there would be as many separate conspiracies developed out of the one combination or agreement for concerted action as there were related proceedings thereafter instituted. In this case, that would mean three crimes of conspiracy, although the indictment charges only one. If a subsequently instituted proceeding matures into criminality the priorly formed conspiracy, then, under the majority's reasoning, the alleged conspiracy in this case became a crime when the first complaint was filed before the first Commissioner on January 17, 1940, a second crime when the second complaint was filed before the other Commissioner on February 14, 1940, and another crime when the Grand Jury proceeding was instituted about the same time. There is no reason why the proceeding first begun should exhaust the function of the succeeding proceedings so far as supporting a charge of obstructing justice is concerned. Furthermore, it is unusual, to say the least, for the commission of crime to be made to depend upon a condition subsequent whose existence can alone result from the independent action of others (federal officers) who manifestly are unconnected with the conspiracy but have it within their power to determine whether or not to start the efficient proceeding.

Nor does the conspiracy become criminal, after a proceeding is instituted, on the ground that it is a continuing thing. Most conspiracies are continuous in the sense that they ordinarily endure for a period of time for the achievement of their intended end. But, where a conspiracy has been held to be continuous, it will be found to have been a conspiracy for the commission of an offense committable from the outset and, so, capable of continuing for successive achievements of the same purpose, such as combinations in restraint of trade. See United States v. Kissel, 218 U.S. 601, 607, 31 S.Ct. 124, 54 L.Ed. 1168. It is also believed that no case can be found where the alleged conspiracy entered into when its offensive object was legally uncommittable has been held to continue until the offense could be committed and thereupon rendered criminal thereby.

Counsel for the government argue that a conspiracy to violate a statute entered into prior to its enactment becomes an indictable conspiracy after the passage of the statute, citing in this connection the cases of Bryant v. United States, 5 Cir., 257 F. 378, 386, and United States v. Wells, D.C.W.D.Wash., 262 F. 833, 836. Neither of those cases supports the rule for which the appellee contends. Specifically, the question was intentionally not passed upon in the Bryant case. See page 386 of 257 F. The conspiracy charge under consideration in that case was for the accomplishment of an offense committable at the time of the formation of the conspiracy, under Sec. 6 of the Criminal Code, 18 U.S.C.A. § 6, regardless of when, if ever, the particular statute (Selective Service Act of 1917, 50 U.S.C.A. appendix § 201 et seq.) was passed. In the Wells case one count in the indictment did allege a conspiracy to violate the Selective Service Act of 1917 entered into before the enactment of the statute. But, as the Court itself makes plain (262 F. page 836), it was a further allegation in that same count charging an offense within Sec. 6 of the Criminal Code which saved that count. In fact, in the Wells case the court expressly approved at page 836 of 262 F., as being "reasonable and logical" the defendant's contention "that it is impossible to conspire to violate a law prior to its passage, and that the doing of an overt act after the passage of the law would not carry with it the conspiracy entered into prior to the passage of the act."

The case of Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, furnishes no basis for an argument that an indictment will lie for conspiring to commit an uncommittable offense against the United States. In the Williamson case the defendants were charged

with conspiring to suborn perjury in violation of R.S. § 5393 (now Sec. 126 of the Criminal Code, 18 U.S.C.A. § 232). Subornation of perjury is thus itself an offense against the United States. And a conspiracy to suborn perjury is likewise a crime because it is a conspiracy to commit an offense against the United States. § 37. The crime of conspiring to suborn is unaffected by the fact that to commit the substantive offense of suborning perjury it must be shown that perjury was committed as a consequence of the subornation. That requirement goes only to the degree of proof necessary to convict for the substantive offense. The offense is none the less a committable one at the time the conspiracy is formed in that witnesses are in esse upon whom an effort can be made to induce them to testify falsely. In no case does the crime of conspiracy depend upon the degree of success achieved in the furtherance of its object. For instance, under Sec. 135, here involved, a conviction for conspiring to intimidate witnesses in a court of the United States might well be sustained although the conspirators could not be convicted of the substantive offense if they never intimidated nor actually endeavored to do so. Failure to establish the substantive offense because of lack of effort on the part of the conspirators is an entirely different matter than inability to prove the substantive offense because there was no proceeding pending in respect whereof witnesses might be intimidated and justice might be obstructed.

When this case was here on appeal from a former conviction (120 F.2d 276), the appellants cited the rule in the Pettibone case in support of their contention that certain evidence received at trial was inadmissible. As the evidence complained of was not only competent but both relevant and material to the indictment as drawn, the contention was rejected. In passing, it may be noted that the rule in the Pettibone case is not a rule of evidence but a rule as to the elements necessary to establish the substantive offense denounced by Sec. 135 of the Criminal Code or a conspiracy to violate that provision. However, certain statements were made in this court's former opinion relative to the bearing of the rule in the Pettibone case on the question of the admissibility of the evidence then under consideration which counsel for the appellee now contend determined the question of the indictment's validity. Such is not the case. The question of the insufficiency of the indictment for failure to allege a conspiracy to commit an offense against the United States was not before us on the former appeal and was never raised until the filing of the motion to quash the indictment at the outset of the second trial. The question was therefore an open one with this court until the current decision.

The motion to quash was none the less sufficiently timely. The question of the insufficiency of the indictment in the particular now under consideration was raised in the court below, was fully argued by counsel and was considered and passed upon by the learned trial judge on its merits. The question could even have been raised in this court for the first time. Rosen v. United States, 161 U.S. 29, 33, 16 S.Ct. 434, 40 L.Ed. 606; Sonnenberg v. United States, 9 Cir., 264 F. 327, 328. See Zoline, Federal Criminal Law and Procedure (1921) § 216. Moreover, the motion in arrest of judgment after verdict at the second trial brought the question squarely upon the record.

I regret that this dissent has extended to such length. But, the fundamental question involved is of such vital importance to the due administration of federal criminal justice as to justify full treatment of our differing views with respect thereto. If what the majority now hold be the law, then all that will be necessary to convict of conspiracy to intimidate witnesses and to obstruct justice under Sec. 135 of the Criminal Code will be a couple of locally unpopular defendants who happened to be seen talking together. The overt act necessary to mature the time for indictment and punishment may, as is well known, be a very incidental and inconsequential thing. The threat to individual liberty concealed in the proposition now approved by this court is not to be minimized and, particularly, not in times when popular passions may be more easily aroused. It invites the sort of possibility which courts should ever be alert to prevent.

For the reasons given, I should reverse the judgment and remand the case to the District Court with directions to quash the indictment and discharge the defendants.

Judge KIRKPATRICK joins in this dissent.

On Petition for Rehearing.

BIGGS, Circuit Judge.

The appellants have filed a petition for rehearing upon the ground that this court was not constituted properly to hear their appeal because Judge Goodrich by special assignment presided in the District Court of New Jersey at the first trial of the appellants and in that trial ruled upon some of the questions involved in the appeal at bar. The defendants were convicted at their first trial and were sentenced. They appealed. The judgment was reversed and the cause was remanded to the District Court of New Jersey for a new trial. See, 3 Cir., 120 F.2d 276. Thereafter, Judge Goodrich had nothing to do with the case below. At the second trial de novo the appellants were convicted again. They have appealed again. This is the appeal at bar.

We are of the opinion that Judge Goodrich was not disqualified under the provisions of Section 120 of the Judicial Code, 26 U.S.C.A. § 216, from sitting in this court on the hearing and decision of the pending appeal, for no ruling or action of Judge Goodrich in respect of the first trial of the appellants is in any way involved by the present appeal to this court. See Rexford v. Brunswick-Balke-Collender Co., 228 U.S. 339, 33 S.Ct. 515, 57 L.Ed. 864; Delaney v. United States, 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462, and the decision of this court, in Triangle Conduit & Cable Co., Inc., v. National Electric Products Corporation, 3 Cir., 125 F.2d 1008.

The petition for rehearing will be denied.